Jeffrey I. Carton
Jerome Noll
MEISELMAN, DENLEA, PACKMAN,
CARTON & EBERZ P.C.
1311 Mamaroneck Avenue
White Plains, New York 10605
(914) 517-5000
Attorneys for Plaintiffs



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
GABRIELA CARMONA and EDNA SEPULVEDA,
on behalf of themselves and all
others similarly situated,

                  Plaintiffs,

        -against-

SPANISH BROADCASTING SYSTEM, INC. and
ALL STAR VACATION MARKETING GROUP, INC.,

                  Defendants.
-------------------------------------------------------------------X

Civ. No. 08-4475 (LAK) (GWG)

**FIRST AMENDED CLASS
ACTION COMPLAINT**

**Jury Trial Demanded**

Plaintiffs, Gabriela Carmona and Edna Sepulveda, by their attorneys,

Meiselman, Denlea, Packman, Carton & Eberz P.C., as and for their verified first

amended class action complaint, allege, with personal knowledge as to their own

actions, and upon information and belief as to those of others, as follows:

<u>Nature of this Case</u>

1.     This action seeks to redress a deceptive and otherwise improper business

practice that Defendants Spanish Broadcasting System, Inc. ("SBS") and All Star

Vacation Marketing Group, Inc. ("All Star") are perpetrating upon unsuspecting listeners

of "97.9 La Mega FM" and "93.1 Amor FM;" specifically, bogus radio station contests in

which listeners are purposefully misled to believe that they have won an all expense

paid, all inclusive trip to various locations in the United States, Mexico or the Carribean.

2.     Despite deceiving listeners to participate in, among other things, a "trivia contest" for which the correct answer will purportedly win them an all-expense paid trip to a vacation destination of their choice, the "contest" Defendants are running is merely a ruse to lure unsuspecting consumers to be charged exorbitant "administrative fees," fake "taxes," and other costs associated with the purportedly free trip they are enticed to believe they have won.

3.     In fact, the trip that listeners have "won" is anything but free.  Although consumers are told repeatedly by Defendants that the trip is an all expense paid, all inclusive trip to an exotic locale, they are never told that they must pay a fee in the amount of $399.00, or that airfare is not included as part of their "all inclusive" trip.

4.     Thus, as a result of Defendants' deceptive and improper actions, New York and New Jersey radio listeners, such as Plaintiffs, have been duped into participating in a contest and travel scam, resulting in Defendants' improper and unlawful monetary gain and benefit.

5.     This suit is brought, pursuant to the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 et seq., New York General Business Law § 349, New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et seq., and the common law, on behalf of a class of all persons who have called Defendant All Star at the behest of Defendant SBS and have been charged a fee for a trip they have "won."  It seeks, inter alia, compensatory damages, including, but not limited to, a refund of all fees charged to callers; reimbursement of airfare expenses incurred by class members as a result of Defendants' scheme; attorneys' fees; and the costs of this suit.

2

<u>Jurisdiction and Venue</u>

6.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331. This is an action for violation of 18 U.S.C. §§ 1961 et seq.

7.     Jurisdiction in this civil action is also authorized pursuant to 28 U.S.C. § 1332(d), as at least one Plaintiff has diverse citizenship from at least one Defendant, there are more than 100 class members, and the amount in controversy is in excess of $5 million.

8.     In addition, jurisdiction in this civil action is authorized pursuant to 28 U.S.C. § 1332(a)(1), as this matter is between citizens of different states and complete diversity exists, and the amount in controversy is in excess of $75,000.00.

9.     This Court has supplemental jurisdiction over Plaintiff's state and common law causes of action, including claims based on violations of New York General Business Law § 349, New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et seq., and the common law of the States of New York and New Jersey, pursuant to 28 U.S.C. § 1367(a).

10.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in the Southern District of New York.

11.     Venue is also proper in this district under 28 U.S.C. § 1391(a)(2), on the grounds that a substantial part of the events relating to Plaintiff's claims occurred in the Southern District of New York.

12.     Venue is additionally proper in this district under 18 U.S.C. § 1965(a), as Defendant SBS's two New York radio stations are located in the Southern District of

3

New York, and Defendant SBS has designated New York County, which is located in the Southern District of New York, with the New York State Department of State as the county in New York State where its principal office is located.

Parties

13.    Plaintiff Gabriela Carmona ("Plaintiff Carmona" or "Carmona") is a citizen and resident of the State of New York, County of Queens. Ms. Carmona was deceived by Defendants into paying a $399.00 fee for an "all inclusive" and "all expense paid" trip she was told she had won in a radio contest.

14.    Plaintiff Edna Sepulveda ("Plaintiff Sepulveda" or "Sepulveda") is a citizen and resident of the State of New Jersey, County of Hudson, and a federal law enforcement officer. Ms. Carmona was deceived by Defendants into paying a $399.00 fee for an "all inclusive" and "all expense paid" trip she was told she had won in a radio contest.

15.    Defendant Spanish Broadcasting System, Inc. is a corporation established under the laws of the State of Delaware, with its principal place of business located in Coconut Grove, Florida.

16.    Defendant SBS does actual business throughout the States of New York and New Jersey, including through operating two radio stations broadcasting in both States -- 97.9 FM and 93.1 FM -- and maintenance of interactive websites -- lamega.com and 931amor.com -- accessible to consumers in, and residents of, both States.

17.    Defendant All Star Vacation Marketing Group, Inc. is a corporation established under the laws of the State of Florida, with its principal place of business

4

located in Miami, Florida.

18.    Defendant All Star does actual business throughout the States of New York and New Jersey, including through the promotion and sale of vacation packages to New York and New Jersey State residents, and through the maintenance of two interactive websites – *allstarvacation.net* and *nextleveltours.com* – accessible to consumers in, and residents of, both States.

Operative Facts

19.    Defendant SBS is the largest publicly traded Hispanic controlled media and entertainment company in the United States.  SBS owns and operates twenty radio stations in the United States, including Mega 97.9 FM and Amor 93.1 FM located in New York, both of which broadcast throughout New York's five boroughs, surrounding counties and in certain areas in the State of New Jersey.

20.    Defendant All Star Vacation Marketing Group, Inc. is a privately held corporation based in Miami, Florida, promoting tour and vacation packages to various destinations in the United States, Mexico, Dominican Republic and the Caribbean. Defendant All Star targets the Hispanic community through Spanish language radio stations and websites.  It does business under a variety of names, including Next Level Tours and Solgaval.

A.    Plaintiff Gabriela Carmona

21.    On or about Sunday afternoon, April 13, 2008, Plaintiff Carmona and her fiancé, Luis Briones, were driving in his car in New York listening to Disk Jockey Pulito Vega ("DJ Vega") broadcasting on 97.9 "La Mega" FM ("La Mega").

5

22.    While Plaintiff Carmona was in her fiance's car, she heard DJ Vega announce a contest. The prize to be awarded to each winner of the contest, DJ Vega said, was an all expense paid and "all included" ("todo incluido") trip to either Punta Cana, Las Vegas, Orlando or Mexico.

23.    DJ Vega then introduced to his listening audience "my friend Alfredo" ("mi amigo Alfredo"). DJ Vega explained that the contest was being made available to La Mega's audience in collaboration with "Alfredo" and "the tour operator," and that they would be in charge of all of the travel arrangements once the contest winners were announced.

24.    As Alfredo explained, the first 35 callers to answer correctly the question "Where is Ruben Blades from?" will go ("se van") either to Punta Cana, Las Vegas, Orlando or Mexico. The winner would be able to chose the travel destination once she or he had won the contest.

25.    DJ Vega and Alfredo, however, failed to disclose to La Mega's listeners that Alfredo was a representative of Defendant All Star, and that the "tour operator" was Defendant All Star doing business as "Next Level Tours."

26.    The contest promotion lasted approximately 60 minutes, with DJ Vega and Alfredo stating over and over again, between songs and commercials, that "no callers are getting the correct answer." DJ Vega, along with Alfredo, urged all listeners to keep calling the phone number they were giving out as no one had yet called in with the correct answer.

27.    During the entire time the contest was airing, DJ Vega and Alfredo repeatedly and enthusiastically implored La Mega's listeners with the prize at hand: an

6

all inclusive, all expense paid vacation to "exotic" and "exciting" locales in the United States, Dominican Republic and Mexico. Both DJ Vega and Alfredo repeated, over and over again, the fact that the winner of the contest would be winning an "all inclusive" and "all expense paid" trip, and that a dream vacation could be won by any listener calling in with the correct answer.

28.     Throughout the 60 minutes or so that the contest was in effect, DJ Vega did not, at any point, state that any listener had called in with the correct answer. In fact, DJ Vega continued to urge his listeners to call the number given out by him and Alfredo, and continued to tell his listeners that no one had yet won the "all inclusive" ("todo incluido") trip. As such, throughout this specific radio segment, DJ Vega urged as many listeners as possible to participate in the "contest."

29.     Plaintiff Carmona, sitting in her fiance's car in New York and listening attentively at this point for almost 60 minutes, was surprised that no one had yet answered the question correctly. The answer to the contest question was not difficult to ascertain, and Ms. Carmona knew the answer. And because DJ Vega and Alfredo continued to insist – for at least 60 minutes – that no one had called in with the correct answer, Ms. Carmona decided that she would call and attempt to win an "all inclusive" and "all expense paid" trip.

30.     Using her cell phone, Plaintiff Carmona dialed the phone number being given out over the radio. Based on DJ Vega's exhortations to his listeners to keep calling the number which was being given out over the radio, Ms. Carmona believed she was calling La Mega's switchboard in order to answer the contest question and win her trip.

7

31.    In fact, the phone number Plaintiff Carmona was told to call connected her not to the radio station, but to Defendant All Star Vacation Marketing Group, Inc., doing business as Next Level Tours, in Orlando, Florida.

32.    Upon calling the number, a woman answered the phone and exclaimed to Plaintiff Carmona: "Congratulations ! You're the winner." ("Felicidades, eres la ganadora"). At that point, Ms. Carmona lost cell phone reception and the call was dropped. Within minutes she was able to regain cell phone coverage and called the number a second time. Once again, the person answering the phone immediately exclaimed: "Congratulations ! You're the winner." Plaintiff Carmona explained that she had just called but had been disconnected. The woman answering the phone asked Ms. Carmona for her cell phone number and told her that she should expect a return phone call within 15-20 minutes.

33.    Plaintiff Carmona was never asked during the first or second phone calls whether or not she knew the answer to the contest question, nor was she told that she was speaking to Defendant All Star, a tour operator based in Florida.

34.    Approximately 15 minutes after Plaintiff Carmona placed her second call, she received a return call on her cell phone. This person immediately asked Ms. Carmona where she would like to go on her free trip: Punta Cana, Las Vegas, Orlando or Mexico?

35.    At this point, not having been asked if she knew the answer to the contest question, Plaintiff Carmona requested the name of the person to which she was speaking. The person responded that Ms. Carmona was speaking to "Next Level Tours," the company responsible for "administering" the trip Ms. Carmona had just won.

8

36.    Plaintiff Carmona was asked again where she wanted to go on her "all inclusive" trip. Before Ms. Carmona had a chance to respond, the Next Level Tour representative reassured Ms. Carmona that whatever destination she did choose, all expenses were prepaid and the hotel was all-inclusive.

37.    The Next Level Tour representative promised, almost word for word, what DJ Vega and Alfredo were promising La Mega's listeners at that very moment: that callers would win an "all inclusive" and "all expense paid" trip to a destination of their choice.

38.    Upon hearing identical promises from three separate persons (DJ Vega, Alfredo and the customer representative on the phone) Plaintiff Carmona chose the "all expense paid" trip to Punta Cana.

39.    After providing her full name, address, and her age, Ms. Carmona was told that their would be a $399 "administrative fee" for the trip. She was assured that this was the only charge she would pay, and that every other expense associated with the trip was covered, and that the trip was "all inclusive."

40.    Upon being reassured that the $399 fee was the sole fee to be paid, Plaintiff Carmona gave the customer representative her credit card number, and was charged the fee. Upon confirmation that the fee had been approved by Ms. Carmona's credit card company, she was told to expect to receive by mail within two to three weeks all the "paperwork" related to the trip. Ms. Carmona was also given a "confirmation number."

41.    After hanging up, Plaintiff Carmona spoke to her fiancé. He pointed out that it didn't seem right that she had to pay a hidden administrative fee if she had

9

indeed won an all expense paid trip.  Ms. Carmona decided to call back to inquire further regarding the details of the trip.

42.    Upon calling a fourth time, the person answering the phone again immediately exclaimed: "Congratulations !  You're the winner."  Plaintiff Carmona explained that she had called previously and had already "won" a trip to Punta Cana. She was calling back because she had questions about the details of the trip she had won.  At that point, the customer representative transferred Ms. Carmona to another person who she said would answer all of Ms. Carmona's questions.  Plaintiff Carmona was transferred to Mr. Cesar Nevado, a "supervisor" at Next Level Tours.

43.    Ms. Carmona first asked Mr. Nevado which airline she would be flying to Punta Cana.  She was stunned to hear Mr. Nevado respond that airfare was not included in her "all expense paid" trip.  In fact, Mr. Nevado said, "you need to make your own arrangements for airfare and pay for it yourself."  Ms. Carmona then asked for the name of the hotel in Punta Cana in which she would be staying.  Mr. Nevado answered that she would be staying at the Sol Melia Hotel and, "not to worry," the hotel was "all inclusive."  She was also told that the trip was for 5 days and 4 nights and that reservations must be made thirty days in advance of the departure date.  Plaintiff Carmona, stunned that she had just paid $399 for an "all inclusive" and "all expense paid" trip which did not include airfare, ended the call.

44.    It was at that point that Ms. Carmona realized that she was a victim of a travel scam, implemented in conjunction with DJ Vega and 97.9 La Mega's fake "contest."  It was obvious that there was no contest per se, and that everyone calling was a "winner," as long as they paid the $399 "administrative" fee and their own airfare.

10

45.    Realizing that she was the victim of a scam, Ms. Carmona attempted to contact Next Level Tours for the fifth time (and a few more times over the next two days) in order to cancel her purportedly free trip and request a refund of the $399 fee. She was unable to obtain a refund of her money. Plaintiff Carmona was told repeatedly that Next Level Tours had a "no-refund policy" and that it was not possible to cancel her trip.

46.    On April 16, 2008, Defendant All Star caused materials to be mailed from Orlando, Florida, and delivered to Plaintiff Carmona at her home address in Rego Park, New York, by the United States Postal Service. The mailing included an invoice reflecting the $399.00 "administrative" fee charged to Ms. Carmona's credit card and further indicated that she had "won" a vacation "package" to Punta Cana for 5 days, 4 nights, and a "gift" to Orlando, Florida, for 3 days and 2 nights. Nowhere on the invoice does it state or indicate that airfare is not included for either of the trips. The mailing also included a brochure from Defendant All Star describing various travel destinations and hotels, and contact information to make reservations.

47.    Throughout this whole ordeal, Plaintiff Carmona was never asked the answer to the question she supposedly had to answer correctly to win her trip, and was never informed prior to paying the $399 "administrative" fee that airfare was not included.

48.    Moreover, she was never told what the $399 fee was for, what it covered, and what administrative fees, if any, were incurred by Defendant All Star. And because the cost of airfare to Punta Cana is expensive, Ms. Carmona cannot afford to take her purportedly free trip to Punta Cana. In fact, it would cost her literally thousands of

11

dollars to go on her "all expense paid" trip, once airfare for two (for herself and her fiancé), taxes and the $399 "administrative" fee are taken into account.

B.    Plaintiff Edna Sepulveda

49.    On or about Friday afternoon, May 2, 2008, Plaintiff Sepulveda was at home, in Jersey City, New Jersey, listening to DJ Vega broadcasting on La Mega.  She heard DJ Vega announce a contest: the first ten callers to call a number being given out by him will win a "free trip" to a destination of their choice.

50.    The prize to be awarded to the first ten callers, DJ Vega said, was an all expense paid "vacation package" to either Punta Cana, Puerto Rico, Orlando or Mexico.

51.    The contest promotion lasted approximately 30 minutes, with DJ Vega stating over and over again, between songs and commercials, that "no callers were calling in to win the vacation package."  As such, DJ Vega urged all listeners to keep calling the phone number he was giving out.

52.    During the entire time the "contest" was airing, DJ Vega enthusiastically described to La Mega's listeners the prize at hand: an all inclusive, all expense paid vacation to "exotic" and "exciting" locales in the United States, Dominican Republic, Puerto Rico and Mexico.  DJ Vega repeated, over and over again, the fact that the first ten callers would be winning an "all inclusive" and "all expense paid" trip, and that a dream vacation could be won by these callers.

53.    Calling from her home in New Jersey, Plaintiff Sepulveda dialed the phone number being given out by DJ Vega over the radio.  Based on DJ Vega's exhortations

to his listeners to keep calling, Ms. Sepulveda believed she was calling La Mega's switchboard in order to win her free trip.

54.    In fact, the phone number Plaintiff Sepulveda was told to call connected her not to the radio station, but to Defendant All Star Vacation Marketing Group, Inc., doing business as Next Level Tours, in Orlando, Florida.

55.    Upon calling the number, a woman answered the phone and exclaimed to Ms. Sepulveda: "Congratulations ! You're the winner." ("Felicidades, eres la ganadora"). The woman answering the phone told Ms. Sepulveda that her name was "Carolina," whom Plaintiff Sepulveda believed was the La Mega DJ named "Carolina." As such, Ms. Sepulveda had no doubt that she had called the radio station, when in fact she had called Next Level Tours in Florida. "Carolina" asked Ms. Sepulveda for her phone number and told her that she should expect a return phone call within 15-20 minutes.

56.    Approximately 15 minutes after Plaintiff Sepulveda placed her call, she received a return call at her home. This person, who was not "Carolina," immediately asked Ms. Sepulveda where she would like to go on her free trip: Punta Cana, Puerto Rico, Orlando or Mexico?

57.    Before Plaintiff Sepulveda had a chance to respond, the Next Level Tour representative told Ms. Sepulveda that whatever destination she did choose, all expenses were prepaid and the hotel was all-inclusive.

58.    At no point in the conversation did the Next Level Tour representative tell Plaintiff Sepulveda that airfare was not included for any of the "free" trips.

59.    Upon hearing identical promises from three separate persons (DJ Vega, "Carolina" and the male customer representative on the phone) Plaintiff Sepulveda

13

chose the "all expense paid" trip to Disney World, in Orlando, Florida. At that point, the Next Level Tours representative told Ms. Sepulveda that she had won a "bonus gift" to Puerto Rico, and that this "gift" was also free and all inclusive.

60.    After providing her full name and address, Ms. Sepulveda was told that she would have to pay "taxes" for her trip to Orlando in the amount of $399.00. She was assured that this was the only charge she would pay, and that every other expense associated with both trips were covered.

61.    Upon being reassured that the $399 was for "taxes," and that it was the sole fee to be paid, Plaintiff Sepulveda gave the customer representative her credit card number, and was charged the fee. Upon confirmation that the fee had been approved by Ms. Sepulveda's credit card company, she was told to expect to receive by mail within two to three weeks all the "paperwork" related to the trip.

62.    Before ending the call, Ms. Sepulveda asked once again if indeed all expenses had now been paid, and that she would be receiving two free trips, one to Orlando and the other to Puerto Rico.

63.    At that point, the Next Level Tours representative responded that all expenses had now been paid, "except for airfare," which "of course" was not included in her "all expense paid" trip. Shocked at what she had just heard, Plaintiff Sepulveda immediately requested a refund of the $399 fee, and pointed out with some anger that she had just been lied to repeatedly by both DJ Vega, "Carolina," and the Next Level Tours representative on the phone.

64.    Ms. Sepulveda realized immediately that she was a victim of a travel scam, implemented in conjunction with DJ Vega and 97.9 La Mega's fake "contest." It

14

was obvious that there was no contest per se, and that everyone calling, not just the first ten callers, was a "winner," as long as they paid $399 in fake "taxes" and their own airfare.

65.    Ms. Sepulveda demanded to cancel her purportedly free trip and again requested a refund of the $399 in "taxes" she had just paid. She was unable to obtain a refund of her money. Plaintiff Sepulveda was told that Next Level Tours had a "no-refund policy" and that it was not possible to cancel her "free" trips.

66.    On or about May 8, 2008, Defendant All Star caused materials to be mailed from Orlando, Florida, and delivered to Plaintiff Sepulveda at her home address in Jersey City, New Jersey, by the United States Postal Service. The mailing included an invoice reflecting the $399.00 "administrative" fee charged to Ms. Sepulveda's credit card and further indicated that she had "won" a vacation "package" to Orlando for 4 days, 3 nights, and a "gift" to Puerto Rico, for 3 days and 2 nights. Nowhere on the invoice does it state or indicate that the fee paid was for taxes (as the Next Level Tours representative stated on the phone) or that airfare is not included for either of the trips. The mailing also included a brochure from Defendant All Star describing various travel destinations and hotels, and contact information to make reservations.

67.    Throughout this whole ordeal, Plaintiff Sepulveda was never informed prior to paying the $399 in "taxes" that airfare was not included.

68.    Moreover, because the cost of airfare to Orlando, Florida, along with tickets to Disney World, are expensive, Ms. Sepulveda cannot afford to take her purportedly free trip to Orlando and Disney World. In fact, it would cost her literally thousands of dollars to go on her "all expense paid" trip, once airfare, Disney park

15

tickets and the $399 fee for "taxes" are taken into account.

Defendants Engaged in a Scheme to Defraud Radio Listeners

69.    Defendant SBS's listener "contests" to win "all inclusive" and "all expense paid" trips are a scam; nothing more than an undisclosed scheme created and implemented by Defendants to deceive 97.9 La Mega's and 93.1 Amor's listeners into believing that they had won a free trip.  Defendants' deception cost each caller at least $399, and airfare if they traveled to their chosen destination.

70.    The implementation of fake radio contests and assessment of a $399 "administrative" fee represents a deliberate profit-making scheme by Defendants. Defendant SBS's scam radio contests are aired in collaboration with Defendant All Star in furtherance of this scheme.  In this manner, Defendants guarantee that "administrative" fees and "taxes" will provide a consistent, lucrative and substantial source of revenue.

71.    Moreover, by creating and implementing scam radio contests, Defendant SBS is able to reap untold advertising revenue, which is shared with Defendant All Star. In addition, the fraudulent fees paid by callers to Defendant All Star could not have occurred without the consent, knowledge and participation of Defendant SBS, and monies collected as a result of this deception were shared by Defendants.

72.    There have been numerous consumer complaints to various Federal and State authorities about Defendant All Star's travel scams, and web sites are full of consumers who have complained about All Star's unfair and deceptive practices. Moreover, the Attorney General of Puerto Rico has issued a cease and desist order to Defendant All Star regarding All Star's travel scams conducted in Puerto Rico.  As a

result, All Star conspired with Defendant SBS to deceive residents of New York and New Jersey, both of which have large and growing Hispanic communities.

73.    Defendant SBS also violated federal rules applicable to all broadcast stations as it did not fully and accurately disclose the material terms of the radio contests, and did not conduct the contests substantially as announced or advertised. Defendant SBS's descriptions of the contests are false, misleading and deceptive with respect to material terms in violation of Federal Communications Commission rules and regulations, including but not limited to, 47 C.F.R. § 73.1216.

74.    As referred to above, no adequate notice has been provided to Plaintiffs, and no consent or bargained-for approval has been granted by Plaintiffs or other listeners who participated in the scam radio contest and were charged a $399 fee prior to being informed that airfare was not included in their purportedly free trip. Nor do Defendants provide any notice, adequate notice or full disclosure of their unfair and deceptive scheme of charging a $399 fee for an "all inclusive" and "all expense paid" trip which does not include airfare.

Class Action Allegations

75.    Plaintiffs bring this action on their own behalf and additionally, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of a class (the "Class") of: (a) all persons in the State of New York who have been charged a fee by Defendant All Star upon participating in scam radio contests aired by Defendant SBS's two New York radio stations, during the period from May 1, 2002, to the present; and (b) all persons in the State of New Jersey who have been charged a fee by Defendant All Star upon participating in scam radio contests aired by Defendant SBS's two New York radio

17

stations, during the period from May 1, 2002, to the present.

76.    Excluded from the Class are Defendants; any parent, subsidiary, or affiliate of Defendants; any entity in which Defendants have or had a controlling interest, or which Defendants otherwise control or controlled; and any officer, director, employee, legal representative, predecessor, successor, or assignee of Defendants.

77.    This action is brought as a class action for the following reasons:

a.    The Class consists of thousands of persons and is therefore so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;

b.    There are questions of law or fact common to the Class that predominate over any questions affecting only individual members, including:

i.    whether Defendants defrauded all of the Class members through a common series of schemes in violation of 18 U.S.C. §§ 1961 et seq.;

ii.    whether Defendants' actions constitute violations of New York General Business Law § 349;

iii.    whether Defendants' actions constitute violations of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et seq.;

iv.    whether Defendants are being unjustly enriched by, among other things, charging callers an "administrative" fee;

v.    whether members of the Class have sustained damages and, if so, the proper measure thereof; and

vi.    whether Defendants should be enjoined from the continued practices and policies with respect to the implementation of a scam radio

18

and travel contest; and

        vii.     whether Defendants should be enjoined from engaging in fake radio contests which are aired for the purpose of deceiving listeners to call Defendant All Star and pay a fee for a purportedly free trip which they are told they have won.

        c.     The claims asserted by Plaintiffs are typical of the claims of the members of the Class;

        d.     Plaintiffs will fairly and adequately protect the interests of the Class, and Plaintiffs have retained attorneys experienced in class and complex litigation, including related litigation involving consumer fraud;

        e.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy, for at least the following reasons:

        i.     Absent a class action, Class members as a practical matter will be unable to obtain redress, Defendants' violations of their legal obligations will continue without remedy, additional consumers and purchasers will be harmed, and Defendants will continue to retain their ill-gotten gains;

        ii.     It would be a substantial hardship for most individual members of the Class if they were forced to prosecute individual actions;

        iii.     When the liability of Defendants has been adjudicated, the Court will be able to determine the claims of all members of the Class;

        iv.     A class action will permit an orderly and expeditious administration of Class claims, foster economies of time, effort, and expense and ensure uniformity of decisions; and

v.    The lawsuit presents no difficulties that would impede its management by the Court as a class action.

f.    Defendants have acted on grounds generally applicable to Class members, making class-wide monetary and injunctive relief appropriate; and

g.    The prosecution of separate actions by individual members of the Class would create a risk of incompatible standards of conduct for Defendants and of inconsistent or varying adjudications for all parties.

78.    Defendants' violations of 18 U.S.C. §§ 1961 et seq. are applicable to all members of the Class, and Plaintiffs are entitled to have Defendants enjoined from engaging in a pattern of racketeering activity, and further enjoined from engaging in deceptive and unconscionable conduct in the future.

FIRST CAUSE OF ACTION
(Violation of N.Y. General Business Law § 349)

79.    Plaintiffs repeat and re-allege the allegations contained in Paragraphs 1 through 78 above as if fully set forth herein.

80.    Through their conduct described above, Defendants have engaged in deceptive acts and practices which resulted in injury to Plaintiffs and the other members of the Class.

81.    By reason of the foregoing, Defendants have violated N.Y. Gen. Bus. Law § 349, and are liable to Plaintiffs and the other members of the Class for the damages that they have suffered as a result of Defendants' actions, the amount of such damages to be determined at trial, plus attorneys' fees.

20

## SECOND CAUSE OF ACTION
(Violation of New Jersey Consumer Fraud Act, N.J.S.A. 56: 8 -1 et seq.)

82.    Plaintiffs repeat and re-allege the allegations contained in Paragraphs 1

through 81 above as if fully set forth herein.

83.    The Consumer Fraud Act prohibits, inter alia:

> The notification to any person by any means, as a part of an advertising
> plan or scheme, that he has won a prize and requiring him to do any act,
> purchase any other item or submit to a sales promotion effort is an
> unlawful practice and a violation of the act to which this act is a
> supplement.

N.J.S.A. 56:8-2.3.

84.    Defendant All Star, in its capacity as marketer, advertiser, promoter, and

seller of purportedly free trips, and Defendant SBS as the developer and implementor

of practices relating to the airing of scam radio contests offering listeners these

purportedly free trips, are each a "person" as defined in the Consumer Fraud Act.

N.J.S.A. § 56:8-1(d).

85.    Defendants' misrepresentations and false, deceptive and misleading

statements with respect to the scam radio contests and listeners winning purportedly

free trips and other prizes, as described above, constitute affirmative

misrepresentations and concealment and omissions of material fact, and are part of a

plan or scheme which constitute an unlawful practice in violation of the Consumer

Fraud Act.

86.    Defendants' false, deceptive and misleading statements regarding the

radio contests and imposition of "administrative" fees for purportedly free trips "won" in

scam radio contests would have been material to any potential listener's decision to call

21

the phone number being given out over the radio and pay fees for "free" trips which did not include airfare.

87.    Moreover, Defendants made such false, deceptive and misleading statements, and concealed material information, about the purportedly free trips to be won, with the intent that others rely upon such statements and not become aware of the concealed information, such as, among other things, "administrative" fees and the cost of airfare.  Thus, Defendants violated the Consumer Fraud Act because they engaged in radio contests which were illegitimate, and the trips "won" by contest participants were not pure gifts and did not come to the recipients without strings attached.

88.    Plaintiffs and the other members of the Class tendered payment to Defendants in the form of "administrative" fees for "free" trips for their own personal use and suffered ascertainable loss as a direct and proximate result of Defendants' actions in violation of the Consumer Fraud Act.

89.    As a consequence of Defendants' wrongful actions, Plaintiffs and the other members of the Class suffered an ascertainable loss of monies, including, but not necessarily limited to, the imposition of fees assessed by Defendant All Star for purportedly free trips which did not include airfare, the amount of such loss to be determined at trial.

90.    Moreover, as Defendant SBS violated various federal rules and regulations applicable to broadcast stations, including but not limited to, 47 C.F.R. § 73.1216, its actions as described above constitute a *per se* violation of the Consumer Fraud Act.

91.    By reason of the foregoing, Defendants are liable to Plaintiffs and the

22

other members of the Class for trebled compensatory damages -- including, but not limited to, payment of a sum equal to treble the amount of a refund of all monies acquired by reason of Defendant All Star's imposition of "administrative" fees -- plus reasonable attorneys' fees, filing fees and reasonable costs of suit, pursuant to N.J.S.A. 56:8-2.11, 8-2.12, 8-19.

### THIRD CAUSE OF ACTION
(Unjust Enrichment)

92.    Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 91 above as if fully set forth herein.

93.    By engaging in the conduct described above, Defendants have unjustly enriched themselves at the expense of Plaintiffs and the other members of the Class and are required, in equity and good conscience, to compensate Plaintiffs and the Class for damages suffered as a result of Defendants' actions.

94.    By reason of the foregoing, Defendants are liable to Plaintiffs and the other members of the Class for damages incurred as a result of Defendants' actions, the amount of such damages to be determined at trial.

### FOURTH CAUSE OF ACTION
(Common Law Fraud)

95.    Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 94 above as if fully set forth herein.

96.    Defendants intentionally misrepresented the legitimacy of the radio contests, and the fact that all listeners calling in were automatically designated "winners" of an "all inclusive" and "all expense paid" trip to a destination of their choice.

23

Moreover, Defendants failed to disclose and omitted the fact that all "winners" would be charged a $399.00 fee and that the cost of airfare was not included.

97.    Defendants knew that their misrepresentations and omissions of material fact about the "all expense paid" trips were false and misleading at the time that Defendants made them, and Defendants intended that listeners and contest participants rely upon such false and misleading representations.

98.    Plaintiffs and the other members of the Class relied, reasonably, justifiably, and in good faith, on Defendants' misrepresentations and omissions of material facts, including Defendants' intentional failure to disclose that certain "administrative" fees and "taxes," and the cost of airfare, were not included in the "all inclusive" and "all expense paid" trips. Defendants further omitted the fact that the radio contests were a scam and that all listeners calling in were "winners." Had they known of the falsity of such omissions and misrepresentations, and the true facts about the scam radio contests, Plaintiffs and the Class would not have participated in the radio contest and paid "administrative" fees or "taxes" and airfare for their purportedly free trips.

99.    Defendants had actual knowledge of the falsity of the material misstatements and omissions as set forth above and intended thereby to deceive Plaintiffs and the Class.

100.    As a consequence of the foregoing, Defendants are liable to Plaintiffs and the other members of the Class for the damages incurred as a result of Defendants' actions, including, but not necessarily limited to, any fees paid to Defendant All Star, including the cost of airfare incurred by members of the Class if they

24

traveled to their chosen destination, the amount of such damages to be determined at trial.

### FIFTH CAUSE OF ACTION
(Civil RICO)

101.    Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 100 above as if fully set forth herein.

102.    This cause of action is brought under the provisions of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 et seq. ("RICO").

103.    Defendant SBS and Defendant All Star each constituted an "enterprise" within the meaning of 18 U.S.C. § 1961(4). Defendant SBS is a "person" and Defendant All Star is a "person" within the meaning of 18 U.S.C. § 1961(3).

104.    In violation of 18 U.S.C. § 1962(a), both Defendant SBS and Defendant All Star received income directly from the pattern of racketeering activity and used the income or its proceeds for their own operation and for themselves. Defendant SBS conspired with Defendant All Star to violate the provisions of 18 U.S.C. § 1962(a), and that conspiracy by Defendant SBS violated 18 U.S.C. § 1962(d). Defendant All Star also conspired with Defendant SBS to violate the provisions 18 U.S.C. § 1962(a), and that conspiracy by Defendant All Star violated 18 U.S.C. § 1962(d).

105.    Defendant SBS and Defendant All Star are or were enterprises engaged in commerce, and, in violation of 18 U.S.C. § 1962(b), the enterprises and patterns of racketeering activity directly affected interstate commerce,

106.    In particular, Defendants conducted or participated in the conduct of the affairs of the enterprises through a pattern of predicate acts of mail fraud and wire fraud

and conspiracy to commit mail fraud and wire fraud, in violation of 18 U.S.C. §§ 1341, 1343, and 1962(c), and conspired to violate Section 1962(c), in violation of 18 U.S.C. § 1962(d).

107.    Defendants engaged, during the airing of the scam radio contest on April 13, 2008, and May 2, 2008, and on information and belief during a significant period of time prior thereto, in a continuing series of schemes to defraud Plaintiffs and the Class by depriving them of their monies through an array of improper devices, including but not limited to, the airing of scam contests and the mailing of invoices reflecting improper charges for undisclosed "administrative" fees for the purportedly free trips won.

108.    Defendants executed this scheme and artifice to defraud by causing matters to be mailed and sounds to be transmitted by means of wire communications in interstate commerce.  Defendants committed, among many others, acts of mail fraud, indictable under 18 U.S.C. § 1341, and wire fraud, indictable under 18 U.S.C. § 1343, each of which constituted "racketeering activity" within the meaning of 18 U.S.C. § 1961(1), and all of which collectively constituted part of a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5).

109.    Continuously during the period since Plaintiffs first heard Defendant SBS's scam radio contest, on April 13, 2008, and May 2, 2008, Defendant SBS and Defendant All Star have engaged in a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5), including many acts indictable under 18 U.S.C. § 1341 and 18 U.S.C. § 1343.  Defendant SBS and Defendant All Star devised and engaged in a series of schemes and artifices to defraud, and, for the purpose of executing such schemes and artifices to defraud, Defendant SBS and Defendant All Star caused

26

matters to be mailed and delivered by the U.S. Postal Service. In addition, for the purposes of executing such schemes and artifices to defraud, Defendant SBS and Defendant All Star caused sounds to be transmitted by means of wire communications in interstate commerce.

110.    As a consequence of the foregoing, Defendants are liable to Plaintiffs and the other members of the Class for the damages incurred as a result of Defendants' actions, including, but not necessarily limited to, any fees paid to Defendant All Star, including the cost of airfare incurred by members of the class if they traveled to their chosen destination, the amount of such damages to be determined at trial, plus treble damages, reasonable attorney's fees, expenses and costs pursuant to 18 U.S.C. § 1964(c).

## SIXTH CAUSE OF ACTION
(Injunctive Relief)

111.    Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 110 above as if fully set forth herein.

112.    Given Defendants' wrongful actions as set forth above, which are ongoing and continuing to deceive and harm Plaintiffs, members of the Class and the general public, the Court should a) preliminarily and permanently enjoin Defendant SBS from continuing its practice of airing fake radio contests in order to deceive listeners into calling Defendant All Star so as to be charged an "administrative" fee or "taxes" for a "free" trip which does not include airfare; b) order Defendants to disgorge all profits earned in connection with the improper and impermissible expropriation of fees through the policy and practice of staging and airing fake radio contests for the purpose of

27

deceiving listeners to pay a fee for a "free" trip which does not include the cost of airfare; and c) immediately to take all steps necessary to disclose to Defendant SBS's current listeners its policy of airing fake radio contests for the purpose of deceiving listeners into calling Defendant All Star.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment against Defendants as follows:

1.     Certifying this action as a class action, with two sub-classes as defined above;

2.     On Plaintiffs' First Cause of Action, awarding against Defendants the damages that Plaintiffs and the other members of the Class have suffered as a result of Defendants' actions, the amount of such damages to be determined at trial, plus attorneys' fees;

3.     On Plaintiffs' Second Cause of Action, awarding against Defendants the damages that Plaintiffs and the other members of the Class have suffered as a result of Defendants' actions, the amount of such damages to be determined at trial, plus attorneys' fees, treble damages, expenses and costs;

4.     On Plaintiffs' Third Cause of Action, awarding against Defendants the damages that Plaintiffs and the other members of the Class have suffered as a result of Defendants' actions, the amount of such damages to be determined at trial;

5.     On Plaintiffs' Fourth Cause of Action, awarding against Defendants the damages that Plaintiffs and the other members of the Class have suffered as a result of Defendants' actions, the amount of such damages to be determined at trial;

6.     On Plaintiffs' Fifth Cause of Action, awarding against Defendants the

damages that Plaintiffs and the other members of the Class have suffered as a result of Defendants' actions, the amount of such damages to be determined at trial, plus treble damages, reasonable attorneys' fees, expenses and costs pursuant to 18 U.S.C. § 1964(c);

7.    On Plaintiffs' Sixth Cause of Action, a) declaring that Defendant SBS's practice of airing fake radio contests is misleading, deceptive and improper, b) preliminarily and permanently enjoining Defendant SBS from continuing its deceptive policies relating to the practice of staging and airing fake radio contests in order to induce its listeners into calling Defendant All Star and paying an "administrative" fee or "taxes" for their "free" trip, which does not include the cost of airfare; c) ordering Defendants to disgorge all profits earned in connection with the improper and impermissible expropriation of "administrative" fees through their policy and practice of staging and airing fake radio contests and inducing the "winners" of the radio contests into calling Defendant All Star and paying an "administrative" fee or "taxes" for their "free" trip, which does not include the cost of airfare; and d) ordering Defendant SBS to take immediately all steps reasonably necessary to disclose to its listeners its policy of airing fake radio contests;

8.    Awarding Plaintiffs interest, costs and attorneys' fees; and

9.    Awarding Plaintiffs such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38 of the Fed.R.Civ.P., Plaintiffs hereby demand a trial by jury.

29

Dated:        White Plains, New York
              May 21, 2008

                                        MEISELMAN, DENLEA, PACKMAN,
                                        CARTON & EBERZ P.C.

                          By:           _____
                                        Jeffrey I. Carton (JC8296)
                                        Jerome Noll (JN7542)
                                        1311 Mamaroneck Avenue
                                        White Plains, New York 10605
                                        (914) 517-5000

                                        Attorneys for Plaintiffs

207727.WPD

## VERIFICATION

STATE OF NEW YORK      )
                              ) ss:
COUNTY OF NEW YORK    )

I, GABRIELA CARMONA, state that I have read the annexed First Amended Verified Class Action Complaint, know the contents thereof and the same are true to the best of my knowledge and information, except those matters therein which are stated to be alleged on information and belief, and as to those matters I believe them to be true.

I affirm that the foregoing statements are true under penalty of perjury.

Dated:       New York, New York
                May 21, 2008

                                            Gabriela Carmona

# VERIFICATION

STATE OF NEW YORK      )
                                       ) ss:

COUNTY OF NEW YORK    )

        I, EDNA SEPULVEDA, state that I have read the annexed First Amended Verified Class Action Complaint, know the contents thereof and the same are true to the best of my knowledge and information, except those matters therein which are stated to be alleged on information and belief, and as to those matters I believe them to be true.

        I affirm that the foregoing statements are true under penalty of perjury.

Dated:       New York, New York
                May 21, 2008

                                         Edna Sepulveda