UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GABRIELA CARMONA and EDNA
SEPULVEDA (on behalf all others
similarly situated)

          Plaintiffs,

        -against-

SPANISH BROADCASTING SYSTEM,
INC., and ALL STAR VACATION
MARKETING GROUP, INC.,

          Defendants.

---

Civil Action No.  08-CV-4475
(LAK/GWG)


**ALL STAR VACATION MARKETING GROUP, INC.'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS
AND MOTION TO STRIKE PORTIONS OF
<u>FIRST AMENDED CLASS ACTION COMPLAINT</u>**


BAKER & HOSTETLER LLP
Robertson D. Beckerlegge (RB1829)
45 Rockefeller Plaza, 11th Floor
New York, NY 10111
Telephone:  212-589-4200
Telecopier:  212-589-4201

Attorneys for Defendant, All Star Vacation
Marketing Group, Inc.

## TABLE OF CONTENTS

I.　　　　INTRODUCTION ...................................................................................... 1

　　A.　　Plaintiff Carmona's Allegations............................................................. 2

　　B.　　Plaintiff Sepulveda's Allegations........................................................... 4

II.　　　　ARGUMENT ........................................................................................... 6

　　A.　　Counts I and II of the Complaint Present  a Unique Choice of Law
　　　　　Question, the Outcome of Which Leaves One or Both Counts Subject to
　　　　　Dismissal.................................................................................................. 6

　　B.　　Counts II-VI Should Be Dismissed for Failure to Comply with Rule 8(a) .......... 10

　　C.　　Plaintiff's Unjust Enrichment Claims Are Deficient Under Florida, New
　　　　　York and New Jersey Law...................................................................... 11

　　D.　　Plaintiff's Common Law Fraud and Civil RICO Claims Fail to Plead
　　　　　Fraud With Specificity............................................................................ 13

　　E.　　Plaintiffs' Civil RICO Claim Fails to State a Claim Upon Which Relief
　　　　　Can Be Granted ...................................................................................... 17

　　F.　　No Claim for Injunctive Relief ............................................................... 19

　　G.　　Paragraph 72 of Plaintiffs' Complaint Should be Stricken as Impertinent
　　　　　and Immaterial ........................................................................................ 19

III.　　　　CONCLUSION ........................................................................................ 20

# CASES

*Bennett v. United States Trust Co. of New York*, 770 F.2d 308 (2d Cir. 1985) ........................ 18

*Covino v.* Patrissi, 967 F.2d 73 (2d Cir. 1992).......................................................................... 19

*Discon* ......................................................................................................................................... 17

*Discon, Inc. v. Nynex Corp.*, 90-CV-546A 1992 U.S. Dist. LEXIS 22722, *25-27 ........... 13, 14

*Discon, Inc. v. Nynex Corp.*, 90-CV-546A, 1992 U.S. Dist. LEXIS 22722.................. 10, 15, 17

*Feinberg v. Katz*, 2005 WL 2990633 at *7 (S.D. N.Y. 2005) ................................................... 18

*FTI Consulting, Inc. v. R. Dean Graves Alvarez & Marsal, Inc.*, 05CIV.6719,
    2007 U.S. Dist. LEXIS 55325 (S.D. N.Y. 2007). ................................................................. 7

*G & R Moojestic Treats, Inc. v. Maggiemoo's International, LLC*, 03CIV1027,
    2004 U.S. Dist. LEXIS 8806 (S.D. N.Y. 2004) ................................................................... 10

*Hillman Construction Corp. v. Wainer*, 636 So. 2d 576 (Fla. 4th DCA 1994) ........................ 11

*In re Rezulin Products Liability Litigation*, 210 F.R.D. 61  (S.D. N.Y. 2002)...................... 8, 9

*Kugler v. Market Development Corp.*, 306 A.2d 489-492 (N.J. 1973) ....................................... 7

*National Oil Well Maintenance Co. v. Fortune Oil & Gas, Inc.*, 02CV.7666, 2005
    U.S. Dist. LEXIS 8896 (S.D. N.Y. 2005)............................................................................. 6

*Ouaknine v. MacFarlane*, 897 F.2d 75 (2d Cir. 1990)............................................................. 17

*Prescient Acquisition Group, Inc. v. MJ Pub. Trust* 1006 WL 2136293 at 5 (S.D.
    N.Y. 2006).............................................................................................................................. 12

*Rezulin (II)*, 390 F. Supp. 2d at 342 ................................................................................... 11, 12

*Simons v. Philip Morris, Inc.*, 124 F. Supp. 2d 46 (E.D. N.Y. 2000) ....................................... 7

# STATUTES

18 U.S.C. §1341 ......................................................................................................................... 16

18 U.S.C. §1343 ......................................................................................................................... 16

18 U.S.C. §1961 ......................................................................................................................... 17

18 U.S.C. §1961(1)...................................................................................................................... 16

18 U.S.C. §1961(3)............................................................................................18

18 U.S.C. §1961(4)............................................................................................18

18 U.S.C. §1961(5)............................................................................................16

18 U.S.C. §1962(a).......................................................................................17, 18

18 U.S.C. §1962(c).......................................................................................17, 18

47 C.F.R. §73.1216...........................................................................................16

N.J. Statutes §56:8-2.3........................................................................................7, 8

Defendant, ALL STAR VACATION MARKETING GROUP, INC. ("All Star"), by and through its undersigned counsel and pursuant to Rules 8(a), 9(b), 12(b)(6), and 12(f) of the Federal Rules of Civil Procedure, files this memorandum of law in support of its motion to dismiss the First Amended Class Action Complaint ("Complaint") filed by the Plaintiffs, GABRIELA CARMONA ("Carmona") and EDNA SEPULVEDA ("Sepulveda").

## I.    INTRODUCTION

Plaintiffs have filed a six-count, class action complaint against All Star. All Star sells vacation packages and hotel room nights and associated services and products.

Plaintiffs allege generally that they are seeking redress for "bogus radio station contests in which listeners are purposely misled" by Defendants, All Star and SPANISH BROADCASTING SYSTEMS, INC. ("SBS"), to believe that the listeners have won an all-expense-paid and all-inclusive trip to Florida, Nevada, Mexico or the Caribbean. Complaint at ¶1. According to Plaintiffs, the Defendants repeatedly advise potential purchasers that the trips are "all-expense-paid trip to exotic locales," but the Defendants never tell the potential purchasers that they must pay a fee of $399 or that airfare is not included. Complaint at ¶3. Accordingly, Plaintiffs assert that, as a result of the Defendants' improper and deceptive acts, certain New York and New Jersey radio listeners have been misled into participating in a scam which has allowed the Defendants to improperly and unlawfully benefit. Complaint at ¶4. The Complaint seeks to recover compensatory damages in the form of a refund of all fees charged to callers, reimbursement of airfare expenses incurred by class members as a result of the vacation packages they purchased, and treble damages, attorneys' fees, court costs and injunctive relief.

According to Plaintiffs' Complaint, venue is proper in the Southern District of New York because "a substantial part of the events and omissions giving rise to Plaintiff's claim occurred in the Southern District of New York," and because "a substantial part of the events relating to Plaintiff's claims occurred in the Southern District of New York." *Id.* at ¶¶ 10-11. Plaintiffs also assert that venue is proper in the Southern District of New York because Defendant, SBS, has two New York radio stations "located in the Southern District of New York and Defendant, SBS, has designated New York County, which is located in the Southern District of New York, with the New York State Department of State as the county in New York State where its principal office is located." *Id.* at ¶12. Again, according to Plaintiffs, Defendant, SBS, owns and operates two radio stations located in New York, LA MEGA 97.9 FM and AMOR 93.1 FM, which broadcast throughout New York's five boroughs, surrounding counties, and in certain areas in the State of New Jersey. Id. at ¶19.

### A.    Plaintiff Carmona's Allegations

Carmona is alleged to be a resident of the State of New York, County of Queens. *Id.* at ¶13. She alleges that on April 13, 2008, while driving in her fiancé's car in New York, she was listening to a broadcast on 97.9 LA MEGA FM. Carmona asserts that she responded to a contest broadcast by LA MEGA wherein she could call and attempt to win an all-inclusive and all-expense-paid trip. *Id.* at ¶29. Carmona asserts that she placed a call from New York to Defendant, All Star, in Orlando, Florida. *Id.* at ¶31. During one of several phone calls she was purportedly misled into paying $399 for a five-day and four-night hotel stay at the Sol Melia Hotel in Punta Cana, which did not include airfare. Plaintiff, Carmona, also asserts that she repeatedly requested a refund of her money but was unable to obtain a refund.

Without attaching copies of the documents mailed to her, Plaintiff, Carmona, asserts that three days after she phoned All Star, she received certain information in the mail on April 16, 2008, as follows:

> 46.  On April 16, 2008, Defendant, All Star, caused materials to be mailed from Orlando, Florida, and delivered to Plaintiff, Carmona, at her home address in Rego Park, New York, by the Untied States Postal Service.  The mailing included an invoice reflecting the $399 "administrative" fee charged to Ms. Carmona's credit card and further indicated that she had "won" a vacation "package" to Punta Cana for five days, four nights, and a "gift" to Orlando, Florida for three days and two nights.  Nowhere in the invoice does it state or indicate that airfare is not included for either of the trips. <u>The mailing also included a brochure from Defendant, All Star, describing various travel destinations and hotels, and contact information to make reservations.</u>

*Id.* at ¶46.  Significantly, the contact information for making reservations is found on a Terms and Conditions form that is included in the mailing.  A true and accurate copy of the Terms and Conditions[1] provided by All Star is attached as Exhibit A to the Declaration of Robertson D. Beckerlegge (the "Beckerlegge Declaration") dated July 3, 2008.  The Terms and Conditions provided by All Star and received by Plaintiffs, Carmona and Sepulveda, included the following provisions:

> NOT INCLUDED:  Any items not listed on "Details of Your Vacation Package" Sheet, including, but not limited to:  airfare, transportation, hotel taxes, cruise booking fees, hotel deposits,

---

[1] It is clear from the allegations of Plaintiffs' Complaint that Plaintiffs had knowledge of these Terms and Conditions, that the terms and conditions were relied on by the Plaintiffs in bringing suit given that the reservation information was referenced and that the documents mailed to Plaintiffs were integral in bringing their suit.  For instance, without such documents, Plaintiffs could not be alleging mail fraud.  *See* Complaint at Count V.  Consideration of the Terms and Conditions attached as Exhibit A to the Beckerlegge Declaration is appropriate for the Court at this stage of the proceedings because Plaintiff had knowledge of and relied on the them in bringing their suit.  *See Cortec Industries, Inc. v. Sum Holding, L.P.*, 949 F.2d 42 (2d Cir. 1991).  When determining the sufficiency of a plaintiff's claim under Rule 12(b)(6), the Court may consider the factual allegations in the complaint, documents attached to the complaint as an exhibit or incorporated in it by reference, matters for which judicial notice may be taken, or documents either in the plaintiff's possession or of which the plaintiff had knowledge and relied on in brining its suit.  *Id.* at 47-48.

certificate and administrative fees, services, charges, meals, rollaway bed, phone message and/or any other items of a personal nature. (Exceptions apply for Caribbean all-inclusive packages). These items are not included in this offer and are the sole responsibility of the user. . . .

CANCELLATION: ALL STAR VACATION MARKETING GROUP prides itself in customer satisfaction and in accordance with Florida State statutes; you may cancel this contract without any penalty or obligation within 30 days from the date of purchase, whichever occurs later. . . . If you decide to cancel, you must notify All Star Vacation Marketing Group in writing of your intent to cancel by returning the certificate and sending notice to: All Star Vacation Marketing Group (Attn) Customer Service. 825 Brickell Bay Dr. Suite 246. Miami-FL 33131. The certificate is defined as the vacation package material in its entirety delivered to the customer.

Ex. A to Beckerlegge Declaration. Absent from Plaintiffs' Complaint is any explanation as to why she did not cancel the contract without penalty or obligation, why she did not return the certificate as defined in the Terms and Conditions, and why she did not attach copies of any written attempt to cancel the certificate.

**B.    Plaintiff Sepulveda's Allegations**

Unlike Carmona, Sepulveda is alleged to be a New Jersey resident who was in her home in Jersey City, New Jersey, listening to a LA MEGA broadcast when she responded to the contest announced by LA MEGA. Complaint at ¶¶ 49-52. Sepulveda, asserts that she placed a call from her home in New Jersey to Defendant, All Star, in Orlando Florida. *Id.* at ¶54. Based on the broadcast and this phone call, Sepulveda asserts that she was misled into paying $399 for an "all-expense-paid" trip to Disney World in Orlando, Florida. *Id.* at ¶¶59, 60. According to Sepulveda, she was misled into believing that the trip was free, included airfare and all that she would have to pay was taxes in the amount of $399. *Id.* at ¶¶57-63. During that same call, Sepulveda admits she was advised that airfare was not included but claims that, despite repeated

requests, she was told that All Star had a no-refund policy and was purportedly unable to obtain a refund. *Id.* at ¶¶63-65.

Within six (6) days of the phone call, Sepulveda admits receiving certain documents in the mail from All Star. *Id.* at ¶66. Similar to Carmona, Sepulveda admits that the "mailing also included a brochure from Defendant, All Star, describing various travel destinations and hotels <u>and contact information to make reservations.</u>" *Id*. As noted previously, the contact information for making reservations is found on the Terms and Conditions form that is provided to all vacation package purchasers. *See* Exhibit A to Beckerlegge Declaration. Also, as noted previously, the Terms and Conditions provided by All Star made clear that airfare is not included and that Sepulveda had thirty (30) days to cancel. *See* Exhibit A to Beckerlegge Declaration; *infra* at p. 1. Here again, Sepulveda provides no explanation as to why she did not cancel the contract without penalty or obligation, why she did not return the certificate as defined in the Terms and Conditions, and why she did not attach copies of any written attempt to cancel the certificate.

Without distinguishing between Plaintiffs, each cause of action brought by Plaintiffs is asserted on behalf of each Plaintiff individually and as representatives of: (a) all persons in the State of New York who have been charged a fee by Defendant, All Star, upon participating in a radio contest aired by Defendant, SBS's two New York radio stations; and (b) all persons in the State of New Jersey who have been charged a fee by Defendant, All Star, upon participating in a radio contest aired by Defendant, SBS's two New York radio stations. In Count I of the Complaint, Plaintiffs, Carmona and Sepulveda, contend that the Defendants violated New York's consumer protection and deceptive trade practices statute found in New York General Business Law Section 349. Oddly, both Plaintiffs also seek to apply New Jersey's version of a consumer

- 5 -

protection and deceptive trade practices statute, claiming that both Defendants have violated New Jersey's consumer fraud act under N.J.S.A. 56: 8-1 *et seq.*  The other claims, all brought on behalf of both Plaintiffs individually and in their representative capacities, are for unjust enrichment (Count III), common law fraud (Count IV), civil RICO (Count V), and injunctive relief (Count VI).  Each of the counts incorporates each and every allegation in all preceding counts.

## II.    ARGUMENT

### A.    Counts I and II of the Complaint Present  a Unique Choice of Law Question, the Outcome of Which Leaves One or Both Counts Subject to Dismissal

Oddly, Plaintiffs, a New York resident and a New Jersey resident, both seek to assert claims under both  New York and New Jersey state consumer-protection laws.  Given that Plaintiff, Carmona's claim has no relation to New Jersey, either Plaintiffs' claims are both governed by New York's consumer-protection laws and Count II for violation of New Jersey's consumer-protection law should be dismissed, or the law of the jurisdiction where the tort occurred applies subjecting both Counts I and II to dismissal.

Federal courts exercising diversity jurisdiction apply the choice of law rules of the state in which the federal court is located.  *National Oil Well Maintenance Co. v. Fortune Oil & Gas, Inc.*, 02CV.7666, 2005 U.S. Dist. LEXIS 8896 at *3 (S.D. N.Y. 2005).  Because the instant case is pending in the U.S. District Court for the Southern District of New York, New York choice of law rules apply.  *See id*.  The first step in a New York choice of law analysis is to determine whether there is a conflict in the laws of the relevant jurisdictions.  *See id*.  A conflict exists when the applicable laws of the relevant jurisdictions impose different substantive rules.  *Id*.  The differences between laws must be relevant to the issues before the court <u>and</u> have a ". . . significant possible effect on the outcome of trial  . . . ."  *Simons v. Philip Morris, Inc.*, 124 F.

- 6 -

Supp. 2d 46, 71 (E.D. N.Y. 2000).  If there is a conflict in the laws of the relevant jurisdictions, New York courts determine which jurisdiction has the greatest interest in the litigation.  *See id*. If the laws of the relevant jurisdictions are not in conflict, New York courts refrain from conducting further analysis.  *FTI Consulting, Inc. v. R. Dean Graves Alvarez & Marsal, Inc.*, 05CIV.6719, 2007 U.S. Dist. LEXIS 55325 at *38 (S.D. N.Y. 2007).

The consumer-protection laws of New York and New Jersey, which are the subjects of Counts I and II, respectively, are in conflict.  Count I of Plaintiffs' Complaint is a cause of action for violation of N.Y. General Business Law Section 349, otherwise known as New York's Unfair and Deceptive Trade Practices Act.  Under Section 349(a), New York declares "deceptive acts or practices in the conduct of any business, trade or commerce, or in the furnishing of any service in this state are hereby declared unlawful."  Section 349(h) provides "any person who has been injured by reason of a violation of Section 349 with a cause of action to be brought in their own name."  In contrast to the requirement of having to establish deceptive acts under the New York Unfair and Deceptive Trade Practices Act, New Jersey's consumer fraud protection act provides a cause of action to private parties who can plead a claim for an ascertainable loss without asserting or otherwise establishing a misrepresentation or other form of deception.  Regardless of any deception or fraud, the New Jersey Consumer Fraud Act prohibits the notification to any person by any means as part of an advertising plan or scheme, that he has won a prize and requiring him to do an act, purchase any other item, or submit to a sales promotion effort.   N.J. Statutes §56:8-2.3.  New Jersey courts have interpreted §56:8-2.3 broadly to apply to any act which requires the recipient to "do something, however slight, in relation to setting in motion the machinery which would deliver him the prize."  *See Kugler v. Market Development Corp.*, 306 A.2d 489-492 (N.J. 1973).

- 7 -

Because there is a conflict between New York and New Jersey consumer-protection schemes, it is necessary to conduct further choice of law analysis. As Counts I and II are statutory tort claims, New York courts apply an interest analysis to determine which jurisdiction has the greatest interest in the litigation. *See In re Rezulin Products Liability Litigation*, 210 F.R.D. 61, 69-70 (S.D. N.Y. 2002) ("*Rezulin* I"). As this Court has noted with respect to the New York choice of law analysis in tort cases:

> In deciding which state has the prevailing interest, we look only to those facts or contacts that relate to the purpose of the particular laws in conflict. "Under this formulation, the significant contacts are, almost exclusively, the parties' domiciles and the locus of the tort." If conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders.

*Id*. at 70). With regard to Carmona's claims, it is clear that New York has a greater interest than New Jersey in this litigation, Carmona is a resident of New York State, heard the subject radio broadcast in New York State, conducted the subject telephone calls in New York State, and received the purportedly offending mail in New York State. Complaint at ¶¶13, 21, 30-45. Moreover, Carmona allegedly suffered her injury in New York. No aspect of Carmona's claim has any relation, alleged or otherwise, to New Jersey. Accordingly, it is clear that Carmona's claims are governed by New York law, and that Carmona's claims under Count II of the Amended Complaint for violation of New Jersey Statute §56:8-2.3 cannot stand.

Applying a similar conflict of laws analysis, Plaintiff, Sepulveda's claims under Count II for violation of New Jersey's consumer-protection laws should arguably also be dismissed. After all, even Plaintiff's Complaint alleges that "a substantial part of the events and omissions giving rise to Plaintiffs' claim occurred in the Southern District of New York" and "a substantial

- 8 -

part of the events relating to Plaintiff's claims occurred in the Southern District of New York."

Complaint at ¶¶ 10-11.  Equally significant is the fact that Co-Defendant, SBS, is located in the

Southern District of New York, has designated New York County as the location for its principal

office, and, according to Plaintiff, the offending radio broadcast originated from SBS's LA

MEGA radio station located in New York.  *Id*. at ¶¶ 12, 19 and 49-52.  Clearly, New York has a

strong interest in regulating conduct within its borders.  If this Court determines that New York

law applies to Plaintiff, Sepulveda's claims, then, here again, Plaintiff, Sepulveda's claims under

New Jersey law found in Count II of the Amended Complaint should be dismissed.  Under this

scenario, the case should proceed forward under Count I of the Amended Complaint alleging a

violation of Section 349 of New York's Unfair and Deceptive Trade Practices Act.

On the other hand, it is recognized that under this interest analysis, the law of the

jurisdiction where the tort occurred will generally apply.  *See Rezulin Products Liability*

*Litigation*, 390 F. Supp. 2d 319, 335 (S.D. N.Y. 2005) ("*Rezulin* II").  As also recognized by this

Court in *Rezulin* II, ". . . the place of the wrong is considered to be the place where the last event

necessary to make the actor liable occurred."  *Id*. at 335, at n.88).  Here, not only is Sepulveda a

resident of New Jersey, her purported injuries were suffered in New Jersey.  If so, it could be

argued, and this Court could determine, that New Jersey has the greatest interest in Sepulveda's

claims, and therefore, while Sepulveda can bring a claim under Count II for violation of New

Jersey's consumer-protection laws, Sepulveda's claim under Count I for violation of Section 349

under New York law must be dismissed.[2]

---

[2] Counts I and II of the Amended Complaint are not brought and/or otherwise asserted in the alternative. In fact, Count II incorporates by reference all prior allegations, including all allegations contained in Count I.

**B.    Counts II-VI Should Be Dismissed for Failure to Comply with Rule 8(a)**

As noted previously, each count of the Amended Complaint beginning with Count II simply incorporates by reference all the preceding paragraphs, including those paragraphs making up the allegations of each prior count.  This method of pleading violates Federal Rule of Civil Procedure 8(a) which provides that "A pleading that states a claim for relief must contain: . . . a short and plain statement of the claim showing the pleader is entitled to relief; . . . ."   "It is not the duty of the defendants or [the] court to sift through the complaint and guess which factual allegations support which claims."  *See Discon, Inc. v. Nynex Corp.*, 90-CV-546A, 1992 U.S. Dist. LEXIS 22722, *49-50.

Plaintiffs' incorporation by reference beginning with Count II of all preceding paragraphs creates numerous pleading problems.   This leads to confusing and internally contradictory claims.  For instance, in Count II (Violation of New Jersey's Consumer Protection Laws), the incorporation by reference of Count I results in a claim for a statutory tort applying two differing state laws.   Count III for unjust enrichment seeks equitable relief; yet, it incorporates by reference the two preceding statutory tort claims.  Count IV for common law fraud incorporates a claim for unjust enrichment (Count III) and a count for violation of New Jersey's consumer-protection laws (Count II), neither of which require fraud or deception.  Count V for civil RICO is based on the purported predicate acts of mail and wire fraud.  However, the inclusion of prior counts that are not based on fraud or deceit creates confusion and uncertainty as to the actual acts being relied upon to establish the requisite predicate acts.  *G & R Moojestic Treats, Inc. v. Maggiemoo's International, LLC*, 03CIV1027, 2004 U.S. Dist. LEXIS 8806 at *31 (S.D. N.Y. 2004).  Finally, Count VI for injunctive relief purports to assert injunctive relief while incorporating all prior counts even though some of those counts would not entitle Plaintiffs to

injunctive relief and the prior counts establish the existence of an adequate remedy at law.  Such pleading deficiencies should not be tolerated, and Counts II, III, IV, V and VI of the Amended Complaint should be dismissed.

### C.    Plaintiff's Unjust Enrichment Claims Are Deficient Under Florida, New York and New Jersey Law

Plaintiff's unjust enrichment claim also raises a conflict of laws analysis.  As this Court recognized in *Rezulin (II)*, 390 F. Supp. 2d at 342, it is probable that New York courts would adopt the approach of the Restatement (2d) of Conflict of Laws to address the question of the choice of law rules applicable to a claim for unjust enrichment.  The Restatement provides that the law governing a claim for unjust enrichment is that of the state which has the most significant relationship to the occurrence or the parties.  *Id.* at 341.  Factors to be considered in this analysis include "the place where the benefit or enrichment was received," "the place where the act conferring the benefit or enrichment was done," and the domicile or place of business of the parties."  *Id.*

In terms of the unjust enrichment claim against All Star, the place where the benefit was received is alleged to be Florida.  Complaint at ¶¶17, 20.  In order to plead a cause of action for unjust enrichment under Florida law, one must allege:

> (1)    Plaintiff has conferred a benefit on the defendant, who has knowledge thereof;
>
> (2)    Defendant voluntarily accepts and retains the benefit conferred;  and
>
> (3)    The circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff.

*Hillman Construction Corp. v. Wainer*, 636 So. 2d 576, 577 (Fla. 4th DCA 1994).

Considering the place where the act conferring the benefit was done, Carmona's unjust enrichment claims would be governed by New York law, while Sepulveda's unjust enrichment claim would be governed by New Jersey law.  In order to establish a cause of action for unjust enrichment under New York law, a plaintiff must allege that "(1) it conferred a benefit upon the defendant and (2) the defendant will obtain such benefit without adequately compensating the plaintiff therefor." *Prescient Acquisition Group, Inc. v. MJ Pub. Trust* 1006 WL 2136293 at 5 (S.D. N.Y. 2006).  Under New Jersey law, unjust enrichment requires a plaintiff to allege that "defendant received a benefit and that the retention of the benefit without payment would be unjust." *Rezulin (II)*, 390 F. Supp. 2d at 342.  New Jersey also requires the plaintiff "that it expected remuneration from the defendant at the time it performed or conferred or benefit on the defendant." *Id*.

Plaintiffs have failed to state a claim upon which relief can be granted for unjust enrichment under Florida, New York and New Jersey pleading requirements.  In Plaintiffs' unjust enrichment claim, Plaintiffs only allege that "by engaging in the conduct described above, Defendants have unjustly enriched themselves at the expense of Plaintiffs and the other members of the class and are required, in equity and good conscience, to compensate Plaintiffs and the class for damages suffered as a result of Defendants' actions."  Complaint at ¶93.  Nowhere in Plaintiffs' Complaint did Plaintiffs allege that All Star retained the $399 without "paying the value thereof" or that the travel voucher, admittedly received by each of the Plaintiffs, was not valued at $399 as would be required under Florida law.  *See Wainer*, 636 So. 2d at 577. Similarly, Plaintiffs fail to allege that the travel voucher or vacation package they received from All Star was not adequate compensation for the value paid by Plaintiffs as required by New York law. *See Prescient Acquisition*,  1006 WL 2136293 at 5.  Finally, Plaintiffs have failed to plead

- 12 -

that Plaintiffs receipt of the vacation package in return for payment of $399 was, in any way, unjust as required by New Jersey law.-[3]

These pleading deficiencies are compounded by the Terms and Conditions which were provided to each Plaintiff and which clearly set forth that Plaintiffs were advised as to what was not included in the vacation package and that each Plaintiff had the opportunity to obtain a refund within thirty (30) days after the purchase. *See* Exhibit A to Beckerlegge Declaration. Absent any allegation that the vacation package was not worth at least $399, or that Plaintiffs complied with the Terms and Conditions in seeking a refund, Plaintiffs have failed to state a claim upon which relief can be granted for unjust enrichment, and Count III should be dismissed.

**D.    Plaintiff's Common Law Fraud and Civil RICO Claims Fail to Plead Fraud With Specificity**

Pursuant to Federal Rule of Civil Procedure 9(b), a party must state fraud with particularity. Federal courts in New York recognize that the application of Rule 9(b) is even more compelling in civil RICO actions because of the potential harm associated with being labeled a racketeer. *See, e.g., Discon, Inc. v. Nynex Corp.*, 90-CV-546A 1992 U.S. Dist. LEXIS 22722, *25-27. The Second Circuit imposes "stringent pleadings requirements" when plaintiffs allege fraud. *See id*. "The complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff[ ] contend[s] these statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *Id*. at *26. When mail fraud is alleged, a plaintiff must also identify the purpose of the mailing within the defendant's fraudulent scheme. *Id*. at *27.

---

[3] In the event the Court does not determine that Florida law governed the Plaintiffs' unjust enrichment claims, then the Court would need to apply the law of New York to Plaintiff, Carmona's unjust enrichment claim, and the law of New Jersey to Plaintiff, Sepulveda's unjust enrichment claim.

The court in *Discon* dismissed civil RICO claims for failing to plead the predicate acts of mail and wire fraud with specificity. With respect to the allegations of mail fraud, the *Discon* court found that the complaint failed to specify what statements in the mailed letters were false or misleading, their relation to the particular defendants, or the purpose of the letters in the defendant's fraudulent scheme. *Id*. at *29.

Like the complaint in *Discon*, Plaintiffs' Amended Complaint fails to plead common law fraud (Count IV) and civil RICO (Count V) through the mails with sufficient specificity. The only substantive allegations regarding the mails are found in paragraph 46 regarding Carmona, and paragraph 66 regarding Sepulveda. In paragraph 46, Carmona, alleges "the mailing included an invoice reflecting the $399 'administrative' fee charged to Ms. Carmona's credit card and further indicated that she had 'won' a vacation 'package' to Punta Cana for 5 days, 4 nights and a 'gift' to Orlando, Florida for 3 days and 2 nights. No where in the invoice does it state or indicate that airfare is not included for either of the trips." These allegations do not specify that these claims were false or misleading and, more importantly, do not give any particulars as to how Carmona contends the statements were fraudulent. After all, Carmona's Complaint alleges that before receiving the mailing, she realized she had not won a vacation package, she had been charged an administrative fee of $399, and she had been told airfare was not included in either of the trips. Complaint at ¶¶43, 44 and 45. Moreover, it is clear that included in the mailing received by Carmona was the Terms and Conditions which clearly stated that airfare was not included. Under these circumstances, Carmona has not alleged fraud with sufficient specificity and, in fact, cannot alleged any fraud with respect to the only mailing attributed to her.

Similarly, in paragraph 66, Sepulveda alleges "the mailing included an invoice reflecting the $399 'administrative' fee charged to Ms. Sepulveda's credit card and further indicated that

- 14 -

she had 'won' a vacation 'package' to Orlando for 4 days, 3 nights, and a 'gift' to Puerto Rico for 3 days and 2 nights.  Nowhere on the invoice does it state or indicate that the fee paid was for taxes (as the Next Level Tours representative stated on the phone) or that airfare is not included for either of the trips."  Here again, Sepulveda fails to specify what portion of this mailing is false or misleading or to give any particulars with respect to how Sepulveda contends the statements were indeed fraudulent with respect to her.  After all, Sepulveda had already alleged that she realized on a prior telephone call that airfare was not included, that she had not won a vacation package, and that she had been charged $399 for the vacation package.  Complaint at ¶¶63 and 64.  Certainly, there is no allegation as to how this particular mailing to her was in any way fraudulent or that she relied on this mailing.  Moreover, Sepulveda cannot claim that there was anything fraudulent with respect to this mailing given that it is acknowledged that she received the Terms and Conditions as part of this mailing.  Those Terms and Conditions make clear that airfare is not included.  Accordingly, Plaintiff's claims of fraud are not stated with sufficient specificity to support common law fraud associated with these mailings, and certainly not mail fraud under federal civil RICO.[4]

Other allegations that are incorporated into both the common law fraud claim and the civil RICO claim also fail to meet the particularity requirements under Rule 9(b).  In paragraph 73, Plaintiffs allege that Defendant, SBS violated unspecified federal rules because "it did not fully and accurately disclose the material terms of the radio contest, and did not conduct the contest substantially as announced or advertised."  Similar allegations are found in paragraph 90 of the Amended Complaint wherein it is alleged that Defendant, SBS "violated various [unspecified] federal rules and regulations application to broadcast stations, including but not

---

[4] It is also noteworthy that Plaintiffs fail to identify any purpose of these mailings within the Defendant's purported fraudulent scheme.  Therefore, to the extent Plaintiffs are attempting to assert mail fraud, they have failed to properly do so.  See *Discon*, 1992 U.S. Dist. LEXIS 22722 at *27.

limited to, 47 C.F.R. §73.1216," which actions are alleged to constitute *per se* violations of the New Jersey's Consumer Fraud Act.  In describing Defendants' fraud in the civil RICO claim, Plaintiff used similarly vague and open-ended allegations that do not rise to the level of particularity needed under Rule 9(b).  For example, Plaintiffs allege:

> 107.  Defendants engaged, during the airing of the scam radio contest on April 13, 2008, and May 2, 2008, and on information and belief during a significant period of time prior thereto, in a continuing series of schemes to defraud Plaintiffs and the class by depriving them of their monies <u>through an array of improper devices, including but not limited to</u>, the airing of scam contests and the mailing of invoices reflecting improper charges for undisclosed "administrative" fees for purportedly free trips won.

> 108.  Defendants execute the scheme and artifice to defraud by causing matters to mailed and sounds to be transmitted by means of wire communications in interstate commerce.  Defendants committed, <u>among many others</u>, acts of mail fraud, indictable under 18 U.S.C. §1341, and wire fraud , indictable under 18 U.S.C. §1343, each of which constituted "racketeering activity' within the meaning of 18 U.S.C. §1961(1), . . . .

Plaintiffs go on to allege generally, and without specificity, that since April 13, 2008 and May 2, 2008, Defendants have "engaged in a 'pattern of racketeering activity' within the meaning of 18 U.S.C. §1961(5), <u>including many acts indictable under 18 U.S.C. §1341 and 18 U.S.C. §1343</u>."  Complaint at ¶109.  In each of these instances, Plaintiffs' references to many acts or acts including but not limited to, are simply insufficient to provide the necessary specificity to permit Defendants to properly respond.

At a minimum, Plaintiffs have failed to allege fraud with sufficient specificity to meet the requirements of Rule 9(b).  This is especially true with respect to Plaintiffs' allegations of fraud via the mails.  Defendant, All Star, should not be left to speculate as to what it was with respect to the mailing that was fraudulent.  To the extent Plaintiffs have alleged common law fraud and

attempt to assert a civil RICO claim based on mail fraud, this Court should dismiss the claim for failure to plead fraud with particularity.[5]

**E.    Plaintiffs' Civil RICO Claim Fails to State a Claim Upon Which Relief Can Be Granted**

Count V of the Amended Complaint purports to assert a claim for civil RICO under 18 U.S.C. §1961, *et seq*.  Although brought in the same count, Plaintiffs appear to attempt to assert two separate claims for civil damages under the civil RICO statute, relying on 18 U.S.C. §1962(a) and §1962(c).  These two purported RICO claims suffer from two uniquely different pleading deficiencies.

18 U.S.C. §1962(a) prohibits the investment in an interstate enterprise of income derived from a pattern of racketeering activity or through the collection of an unlawful debt."  18 U.S.C. §1962(a).  As the *Discon* court ruled, "to state a claim for civil damages under §1962(a), a plaintiff must allege injury from the defendant's investment of racketeering income in an enterprise."  *Discon*, 1992 U.S. Dist. LEXIS 22722 at *31-32 (citing *Ouaknine v. MacFarlane*, 897 F.2d 75, 83 (2d Cir. 1990) (dismissing RICO claim under §1962(a) because plaintiff alleged no facts asserting injury by reason of defendant's investment of racketeering income)). I The *Discon* court went on to note that "it is not enough for plaintiff to allege injury from the predicate acts because 'the essence of a violation of §1962(a) is not commission of predicate acts, but investment of racketeering income.'"  *Id.* at *32.  Repeating the errors found in the pleadings in both *Discon* and *Ouaknine*, Count V of Plaintiffs' Complaint fails to state a claim upon which

---

[5] To the extent that Plaintiff claims fraud with respect to the mailings, the common law fraud and mail fraud claims are subject to dismissal for failure to state a claim upon which relief can be granted because of the Terms and Conditions that were mailed with the materials delivered to both Carmona and Sepulveda.  *See* Exhibit A to Beckerlegge Declaration.  Any claims of fraud, deception, or reasonable reliance cannot be made given the terms of the actual provisions contained in the Terms and Conditions. *See infra* at pp. 3-6.

relief can be granted under §1962(a) because Plaintiffs have alleged no facts asserting injury by reason of All Star's purported investment of racketeering income.  As such, Count V of the Complaint is subject to dismissal to the extent it seeks to assert a claim under 18 U.S.C. §1962(a).

To the extent that Plaintiffs in Count V of the Complaint attempt to assert a civil RICO violation under 18 U.S.C. §1962(c), it also fails to state a claim upon which relief can be granted because Plaintiffs have failed to allege that the "person" and the "enterprise" were distinct.  As has been repeatedly recognized by the Second Circuit, ". . . under §1962(c), a corporate entity may not be simultaneously the "enterprise" and the "person" who conducts the affairs of the enterprise through a pattern of racketeering activity."  *Bennett v. United States Trust Co. of New York*, 770 F.2d 308, 315 (2d Cir. 1985); *Feinberg v. Katz*, 2005 WL 2990633 at *7 (S.D. N.Y. 2005) ("the Second Circuit has repeatedly held that §1962(c) 'clearly envisions' that the 'person' and the 'enterprise' will be distinct").  In the instant case, Plaintiffs allege that there were two separate enterprises and two separate persons for purposes of its §1962(c) claim.  In particular, Plaintiffs assert:

> 103.  Defendant SBS and Defendant All Star each constituted an "enterprise" within the meaning of 18 U.S.C. §1961(4).  Defendant SBS is a "person" and Defendant All Star is a "person" within the meaning of 18 U.S.C. §1961(3). . . .

> 106.  In particular, Defendants conducted or participated in the conduct or the affairs of the enterprises through a pattern of predicate acts of mail fraud and wire fraud . . . .

Amended Complaint at ¶¶ 103 and 106.  Having placed both Defendant, All Star, in the role of both a "person" and the "enterprise", and having identified Defendant, SBS, as also comprising an enterprise and a person, and than having asserted that the affairs of the enterprises were conducted through a pattern of predicate acts under §1962(c), Plaintiffs have failed to state a

claim upon which relief can be granted.  Plaintiffs' allegations contained in Count V of the

Amended Complaint are insufficient to establish the necessary separation between the "person"

and the "enterprise" in order to sufficiently state a claim under §1962(c).

### F.    No Claim for Injunctive Relief

Count VI of the Amended Complaint purportedly seeking injunctive relief is woefully

deficient.  The sole basis alleged for injunctive relief is a vague reference to "Defendant's

wrongful actions set forth above, which are ongoing and continuing to deceive and harm

Plaintiffs, . . . ."  Complaint at ¶12.  To the extent Plaintiffs rely on each of the claims asserted in

the Counts preceding Count VI, each of those bases for injunctive relief suffer from the same

defects set forth above in this memorandum.  Otherwise, the standard in the Second Circuit for

issuing a preliminary injunction is well established and requires (1) irreparable harm and (2)

either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the

merits and a balance of hardships tipping decidedly toward the party seeking injunctive relief."

*Covino v.* Patrissi, 967 F.2d 73,77 (2d Cir. 1992).  Plaintiffs fail to allege any of these elements.

Accordingly, Plaintiffs' claims for preliminary and permanent injunctions must be dismissed.

### G.    Paragraph 72 of Plaintiffs' Complaint Should be Stricken as Impertinent and Immaterial

In paragraph 72 of the Complaint, Plaintiffs allege:

> 72.    There have been numerous consumer complaints to various
> Federal and State authorities about Defendant All Star's travel scams, and web
> sites are full of consumers who have complained about All Star's unfair and
> deceptive practices.  Moreover, the Attorney General of Puerto Rico has issued a
> cease and desist order to Defendant All Star regarding all Star's travel scams
> conducted in Puerto Rico.  As a result, All Star conspired with Defendant SBS to
> deceive residents of New York and New Jersey, both of which have large and
> growing Hispanic communities..

This allegation has no relevance to any of the facts which form the basis for Plaintiffs' claims in

this matter.  This allegation seeks only to denigrate the reputation of All Star and serves no

- 19 -

function to prove any relevant facts in this case.  Pursuant to Fed.R.Civ.P. 12(f), the Court should strike this material because it immaterial, impertinent and scandalous.

## III.    CONCLUSION

Based on the foregoing, Defendant, All Star, respectfully requests this Honorable Court enter an order dismissing Counts II, III, IV, V and VI of the Amended Complaint or, alternatively with respect to Count II, dismissing Count I as to Plaintiff, Sepulveda, and dismissing Count II as to Plaintiff, Carmona, and granting such further relief as is just and proper.  Defendant further requests that this Honorable Court strike paragraph 72 of Plaintiffs' Complaint.

Dated:  July 3, 2008
New York, New York

BAKER & HOSTETLER LLP

By: s/  Robertson D. Beckerlegge
    Robertson D. Beckerlegge (RB1829)
    45 Rockefeller Plaza,
    11th Floor
    New York, NY 10111
    Telephone:  212-589-4200
    Telecopier:   212-589-4201
Attorneys for Defendant, All Star Vacation
Marketing Group, Inc.

OF COUNSEL:    Robert W. Thielhelm, Jr.
    Florida Bar No. 0889679
    Scott E. Damon
    Florida Bar No. 031909
    BAKER & HOSTETLER LLP
    Post Office Box 112
    Orlando, FL 32802
    Telephone:  407-649-4000
    Telecopier:  407-841-0168
    *Motions for Admission Pro Hac Vice Pending*

090733, 000002, 501929252.2