UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GABRIELA CARMONA and EDNA
SEPULVEDA, on behalf of themselves and
all others similarly situated,

               Plaintiffs,

    vs.

SPANISH BROADCASTING SYSTEM,
INC. and ALL STAR VACATION
MARKETING GROUP, INC.,

           Defendants.

Civil Action No. 08-cv-4475 (LAK)/(GWG)


**MEMORANDUM OF LAW OF SPANISH BROADCASTING SYSTEM, INC.
IN SUPPORT OF ITS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**


KAYE SCHOLER LLP
425 Park Avenue
New York, NY  10025
Tel. (212) 836-8000
Fax (212) 836-8689

*Attorneys for Defendant
  Spanish Broadcasting System, Inc.*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...............................................................................................1

STATEMENT OF THE CASE ................................................................................................1

ARGUMENT ..........................................................................................................................4

I.      Plaintiffs' RICO Claims Fail to State a Claim for Relief ...........................................6

        A.      Plaintiffs Have Failed to Allege a Section 1962(c) Claim..............................7

                1.      Plaintiffs Have Failed to Allege "Racketeering Activity" Because
                        Their Allegations of Mail and Wire Fraud Are Insufficient .................7

                2.      Plaintiffs Have Failed to Allege, Nor Can They, that Defendants – the
                        "Persons" – Are Distinct from the "Enterprise" ...............................10

                3.      Plaintiffs Have Failed to Allege that SBS Participated in the Operation
                        or Management of an Enterprise.......................................................10

        B.      The Remaining RICO Claims Fail To State a Claim Upon Which Relief Can
                Be Granted ...................................................................................................11

                1.      Plaintiffs Have Failed to Allege a Section 1962(a) Claim..................11

                2.      Plaintiffs Have Failed to Allege a Section 1962(b) Claim ................12

                3.      Plaintiffs Have Failed To Allege a Section 1962(d) Claim ..............13

II.     Plaintiffs' New York General Business Law Claim Fails to State a Claim for Relief ...........14

III.    Plaintiffs' New Jersey Consumer Fraud Act Claim Fails to State a Claim for Relief............15

        A.      Plaintiffs' Claim Is Barred by the Exclusion for Radio Broadcasting
                Companies....................................................................................................15

        B.      Plaintiffs Have Failed to Allege a Claim Under Section 56:8-2.3..............16

IV.     Plaintiffs' Common Law Fraud Claim Fails to State a Claim for Relief.................16

V.      Plaintiffs' Unjust Enrichment Claim Fails to State a Claim for Relief....................18

        A.      Plaintiffs Fail to Allege Any Direct Dealings or  Substantive Relationship
                with SBS .....................................................................................................19

        B.      Plaintiffs Fail to Allege that Any Money Paid to All Star Enriched SBS .................20

CONCLUSION......................................................................................................................21

## TABLE OF AUTHORITIES

**Page(s)**

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,*
    493 F.3d 87 (2d Cir. 2007)..........................................................................5

*Banco Popular N. Am. v. Gandi,*
    184 N.J. 161 (2005) ..................................................................................17

*Bell Atlantic Corp. v. Twombly,*
    127 S. Ct. 1955 (2007)....................................................................1, 4, 5,
                                                                                                        15

*Bennett v. United States Trust Co.,*
    770 F.2d 308 (2d Cir. 1985)......................................................................10

*Cedar Swamp Holdings, Inc. v. Zaman,*
    487 F. Supp. 2d 444 (S.D.N.Y. 2007).........................................................6

*Citibank, N.A. v. Walker,*
    12 A.D.3d 480, 787 N.Y.S.2d 48 (2d Dep't 2004) ....................................18

*Conley v. Gibson,*
    355 U.S. 41 (1957)..................................................................................4, 5

*Dietrich v. Bauer,*
    76 F. Supp. 2d 312 (S.D.N.Y. 1999)..........................................................11

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.,*
    385 F.3d 159 (2d Cir. 2004).......................................................................8

*First Capital Mgmt., Inc. v. Brickellbush, Inc.,*
    219 F. Supp. 2d 576 (S.D.N.Y. 2002), *aff'd,* 385 F.3d 159 (2d Cir. 2004) ...................................13

*Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC,*
    479 F. Supp. 2d 349 (S.D.N.Y. 2007)......................................................7, 8

*Gaidon v. Guardian Life Ins. Co. of America,*
    94 N.Y.2d 330, 704 N.Y.S.2d 177 (N.Y. 1999) ....................................16, 17

*Goldstein v. Garlick,*
    65 Misc. 2d 538 (Queens Cnty. Sup. Ct. 1971) .........................................9

*Hecht v. Commerce Clearing House, Inc.,*
    897 F.2d 21 (2d Cir. 1990)....................................................................13, 14

*Holloway v. King,*
    361 F. Supp. 2d 351 (S.D.N.Y. 2005), *aff'd,* 161 Fed. Appx. 122 (2d Cir. 2005) .........................3

**Page(s)**

*Huntsman Packaging Corp. v. Kerry Packaging Corp.*,
992 F. Supp. 1439 (M.D. Fla. 1998) .........................................................................18

*Inn Chu Trading Co., Ltd. v. Sara Lee Corp.*,
810 F. Supp. 501 (S.D.N.Y. 1992) ..............................................................................8

*Iqbal v. Hasty*,
490 F.3d 143 (2d Cir. 2007), *cert. granted*, __ S.Ct. __ , 2008 WL 336310
(Jun. 16, 2008) ...........................................................................................................5

*In re JetBlue Airways Corp. Privacy Litig.*,
379 F. Supp. 2d 299 (E.D.N.Y. 2005) ...........................................................18, 19, 20

*Karlin v. IVF America, Inc.*,
93 N.Y. 2d 282, 690 N.Y.S.2d 495 (1999) .................................................................15

*Katzman v. Victoria's Secret Catalogue*,
167 F.R.D. 649 (S.D.N.Y. 1996), *aff'd*, 113 F.3d 1229 (2d Cir. 1997)............11, 12, 13

*Lake Minnewaska Mountain Houses, Inc. v. Rekis*,
259 A.D.2d 797, 686 N.Y.S.2d 186 (3d Dep't 1999) ..................................................18

*Manhattan Telecomm's Corp., Inc. v. DialAmerica Mktg., Inc.*,
156 F. Supp. 2d 376 (S.D.N.Y. 2001).........................................................................10

*Matsumura v. Benihana National Corp.*,
542 F. Supp. 2d 245 (S.D.N.Y. 2008) ..........................................................................5

*Meadowlands Investments, LLC v. CIBC World Markets Corp.*,
2005 U.S. Dist. LEXIS 21102 (S.D.N.Y. 2005).........................................................16

*Michele Pommier Models, Inc. v. Men Women NY Model Management, Inc.*,
14 F. Supp. 2d 331 (S.D.N.Y.1998), *aff'd*, 173 F.3d 845 (2d Cir. 1999)....................20

*Morin v. Trupin*,
711 F. Supp. 97 (S.D.N.Y. 1989).........................................................................13, 14

*New York Electrolysis Ass'n Inc. v. Bell Atlantic Yellow Pages Co.*,
2000 N.Y. Misc. LEXIS 534 (Saratoga Cnty. Sup. Ct. Dec. 11, 2000)........................15

*O'Brien v. Nat'l Prop. Analysts Partners*,
936 F.2d 674 (2d Cir. 1991)...................................................................................7, 9

*O Zon Inc. v. Charles*,
272 F. Supp. 2d 307 (S.D.N.Y. 2003) ..........................................................................4

*Osrecovery, Inc. v. One Groupe Int'l , Inc.*,
229 F.R.D. 456 (S.D.N.Y. 2005) .................................................................................8

**Page(s)**

*Ouaknine v. MacFarlane,*
  897 F.2d 75 (2d Cir. 1990)..................................................................................11, 12

*Paramount Film Distrib. Corp. v. State of New York,*
  30 N.Y.2d 415, 334 N.Y.S.2d 388 (1972) ...............................................................18

*Park v. Korea Radio USA, Inc.,*
  2007 WL 3358139 (Cal App. 2007) .........................................................................9

*In re Parmalat Sec. Litig.,*
  501 F. Supp. 2d 560 (S.D.N.Y. 2007).....................................................................2, 5

*People's Nat'l Bank of Commerce v. First Union Nat'l Bank of Florida, N.A.,*
  67 So. 2d 876 (Fla. Dist. Ct. App. 1996) ................................................................18

*Pittman v. Dow Jones & Co.,*
  662 F. Supp. 921 (E.D. La. 1987), *aff'd*, 834 F.2d 1171 (5th Cir. 1987) .......................9

*Pressler v. Dow Jones & Co., Inc.,*
  88 A.D.2d 928, 450 N.Y.S.2d 884 (2d Dep't 1982) ...................................................9

*Redtail Leasing v. Thrasher (In re Motel 6 Secur. Litig.),*
  1997 U.S. Dist. LEXIS 3909 (S.D.N.Y. Apr. 2, 1997)...........................................18, 19

*Reves v. Ernst & Young,*
  507 U.S. 170, 113 S. Ct. 1163 (1993)......................................................................10

*Roth v. Jennings,*
  489 F.3d 499 (2d Cir. 2007)....................................................................................2

*Reuben H. Donnelley Corp. v. Mark I Mktg. Corp.,*
  893 F. Supp. 285 (S.D.N.Y. 1995)............................................................................4

*Sperry v. Crompton Corp.,*
  8 N.Y.3d 204, 831 N.Y.S.2d 760 (N.Y. 2007) ...............................................18, 19, 20

*State ex rel. Spitzer v. Daicel Chem. Indus., Ltd.,*
  42 A.D.3d 301, 840 N.Y.S.2d 8 (1st Dep't 2007) .....................................................19

*Suarez v. Underwood,*
  103 Misc. 2d 445, 426 N.Y.S.2d 208 (Queens Cnty. Sup. Ct. 1980), *aff'd* 84 A.D.
  787, 449 N.Y.S.2d 438 (2d Dep't 1981).....................................................................9

*West 79th St. Corp. v. Congregation Kahl Minchas Chinuch,*
  2004 U.S. Dist. LEXIS 19501 (S.D.N.Y. 2004).........................................................10

*Wexner v. First Manhattan Co.,*
  902 F.2d 169 (2d Cir. 1990).....................................................................................7

**Page(s)**

*Zaro Licensing v. Cinmar, Inc.*,
   779 F. Supp. 276 (S.D.N.Y. 1991)..................................................................6, 16, 17

## **STATUTES**

47 C.F.R. § 73.1216 ...........................................................................................14

18 U.S.C. §§ 1961, *et seq.*..................................................................................4, 6

18 U.S.C. § 1962(a), & (d)....................................................................................4

18 U.S.C. § 1962(a), (b), (c), (d)..............................................................6, 10, 11,
                12, 13, 14

Fed. R. Civ. P. 8(a)(2) ..........................................................................................4

Fed. R. Civ. P. 9(b) ......................................................................................1, 6, 7,
              9, 14, 16
              17

Fed. R. Civ. P. 12(b)(6)...................................................................................1, 2, 11

N.J.S.A. § 56:8-1, 2...........................................................................................4, 15

N.J.C.F.A. § 56:8-2.3 ...........................................................................................16

N.Y. Gen. Bus. Law § 349.................................................................................4, 15

N.Y. Gen. Bus. Law § 349(e) ..............................................................................14

## **MISCELLANEOUS**

*McCarthy on Trademarks and Unfair Competition* § 27:70 (4th ed. 2008) .........................................9

Defendant Spanish Broadcasting System, Inc. ("SBS") submits this memorandum of law in support of its motion, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss each of the claims asserted against it in plaintiffs' Amended Complaint.[1]

## PRELIMINARY STATEMENT

When all of plaintiffs' conclusory and speculative allegations are stripped away, their claims against SBS amount to an attempt to impose liability on a radio station for having its disc jockey read another company's advertisement and promotion. No matter the theory – RICO, New York and New Jersey statutory deceptive trade practices and consumer fraud, common law fraud, unjust enrichment – plaintiffs' claims either fail to allege basic elements or "*enough* facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007) (emphasis added). Neither do they meet the heightened pleading standard under Rule 9(b), FED. R. CIV. P., applicable to plaintiffs' fraud based claims. Having failed to plead a claim for relief under any theory, plaintiffs' complaint should be dismissed.

## STATEMENT OF THE CASE

The basic facts alleged in the First Amended Class Action Complaint ("FAC"), which we accept at face value on this motion, are as follows:

Plaintiff, Gabriela Carmona, a resident and citizen of New York, and plaintiff Edna Sepulveda, a resident and citizen of New Jersey, listen to SBS' Spanish language radio station 97.9 FM, known as "La Mega." (FAC ¶¶ 13-14, 19). Both allege that they heard promotions of defendant All Star Vacation Marketing Group, Inc. ("All Star") for the "sale of vacation packages to New York and New Jersey State residents." (FAC ¶ 18). In particular, they allege that, on different dates, they each heard SBS disc jockey Polito Vega "announce a contest" on La Mega. (FAC ¶¶ 21, 22, 49).

---

[1]     Plaintiffs filed an amended complaint, adding Ms. Sepulveda as a plaintiff, before the deadline for SBS to answer or move with respect to the initial complaint had passed.

Ms. Carmona alleges that Mr. Vega "explained that the contest was being made available to La

Mega's audience in collaboration with 'Alfredo' and 'the tour operator,' and that they would be in

charge of all the travel arrangements once the contest winners were announced."  (FAC ¶¶ 23, 25).

Ms. Carmona alleges that Mr. Vega introduced Alfredo, an All Star representative, who then

explained the contest – the first 35 callers who answered a trivia question correctly would receive an

"all expense paid and 'all included' . . . trip" to one of various locations.  (FAC ¶¶ 22, 24).  For her

part, Ms. Sepulveda alleges that she heard Mr. Vega announce a contest by which the first 10 callers

would receive an "all expense paid 'vacation package'" to one of several locations.  (FAC ¶ 50).

      These advertisements, which were read on the air by SBS's disc jockey Polito Vega and paid

for by All Star (FAC ¶¶ 18, 71), concluded with the following statement:

> Hey, my friends!  What you just heard was a paid advertisement.  The promotion and
> offer are made by the advertiser alone, and are not sponsored by Mega 97.9.  Mega
> accepts no responsibility for the advertiser's fulfillment of the promotion.  Any
> claims should be addressed to the advertiser, not to Mega 97.9.  Administrative
> charges will apply.  Moving right along![2]

      Consistent with their allegations that All Star would administer the promotion and travel

arrangements, plaintiffs allege that upon calling the telephone numbers read by Mr. Vega (and, in

Carmona's case, by Alfredo) during the advertisements, they were connected directly to All Star –

not SBS – and that Ms. Carmona was told that she was speaking to the company "responsible for

'administering' the trip."  (FAC ¶¶ 31, 35, 54).  Plaintiffs further allege that at the start of the

telephone call, representatives at All Star told them that they were "winner[s]," asked for their

telephone numbers, and told them that someone would be calling them back.  (FAC ¶¶ 32, 55).

---

[2]    A recording of the statement and a certified transcription and translation of the statement are
attached to the affidavit of Frank Flores, the General Manager of 97.9 FM, which accompanies this
motion.  Because, although the complaint refers to the advertisement and bases the alleged claims
for relief on it, plaintiffs failed to attach the advertisement to the complaint, the Court can take
judicial notice of it on this motion to dismiss under FED. R. CIV. P. 12(b)(6).  *See, e.g., Roth v.
Jennings*, 489 F.3d 499, 509 (2d Cir. 2007); *In re Parmalat Sec. Litig.*, 501 F. Supp. 2d 560, 581
n.123 (S.D.N.Y. 2007) (LAK); *Holloway v. King*, 361 F. Supp. 2d 351, 353 n.5 (S.D.N.Y. 2005)
(LAK), *aff'd*, 161 Fed. Appx. 122 (2d Cir. 2005).

Shortly thereafter, plaintiffs received a telephone call from an All Star representative, who asked them where they would like to travel and assured them that "all expenses were prepaid and the hotel was all-inclusive." (FAC ¶¶ 34-36, 56, 57).  After providing their names, addresses, and ages to the All Star representatives, they were told that they had to pay a fee of $399 for the trip and were reassured that that was the "sole fee to be paid."  (FAC ¶¶ 39, 40, 60, 61).  After learning of the $399 fee, plaintiffs gave their credit card numbers to the All Star representatives and were charged that amount.  (FAC ¶¶ 40, 61).  They allege that after being charged the fee, an All Star representative informed them that airfare was not included in the package.  (FAC ¶¶ 43, 63).  Upon learning that airfare was not included, each demanded from All Star a refund of the $399, but was told that there was a "'no-refund' policy and that it was not possible" to cancel their trips.  (FAC ¶ 45, 63, 65). Plaintiffs also allege that All Star mailed them "materials" and a "brochure" concerning the details of their trips, including an invoice reflecting the fees they paid.  (FAC ¶¶ 46, 66).  Neither plaintiff paid for any airfare and neither went on a vacation.  (FAC ¶¶ 48, 68).

In short, plaintiffs' allegations boil down to the claim that SBS ran All Star's allegedly misleading ads.  To be sure, plaintiffs make the conclusory allegations that defendants were in a "profit-making scheme" together; that SBS "creat[ed] and implement[ed] scam radio contests"; that the fees "paid by callers to Defendant All Star could not have occurred without the consent, knowledge and participation of Defendant SBS"; and that "the monies collected as a result of this deception were shared by Defendants." (FAC ¶ 71).  But the only specific allegations as to SBS belie the notion that SBS was anything more than a radio broadcaster that announced the promotion to listeners, told them to call a telephone number to participate in the promotion, and described the potential prize.  (FAC ¶¶ 22, 26-28, 49-52).  Thus, plaintiffs do not allege that they ever (i) spoke with anyone from SBS, (ii) called SBS regarding the advertised promotion, (iii) paid any money to SBS, (iv) demanded reimbursement from SBS for the fees they paid to All Star, or (v) received any

mailing or documents from SBS.  And, finally, they fail to allege that the documentation they

received from All Star referred in any way to SBS.

Based on these allegations, plaintiffs, on behalf of themselves and a purported class of "all

persons in" New York and New Jersey "who have been charged a fee by Defendant All Star upon

participating" in the "radio contests" (FAC ¶ 75), allege claims under the Racketeer Influenced and

Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, *et seq*. (Count V), the New York General

Business Law Section 349 (Count I) and the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et*

*seq*. (Count II), and for common law fraud (Count IV) and unjust enrichment (Count III).[3]  As

explained below, plaintiffs having failed to allege "enough facts to state a claim to relief that is

plausible on its face," *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007), the Court

should dismiss the complaint for failure to state a claim upon which relief can be granted.

## <u>ARGUMENT</u>

Rule 8(a), FED. R. CIV. P., "requires . . . 'a short and plain statement of the claim showing

that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim

is and the grounds upon which it rests.'"  *Twombly*, 127 S. Ct. at 1964 (quoting FED. R. CIV. P.

8(a)(2), *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Thus, wholly apart from anything else, the

plaintiff must allege each of the elements of the "claim."  *Id*. at 1964-65.

In addition, the plaintiff must plead "enough facts to state a claim to relief that is plausible on

its face."  *Id*. at 1974.  While, under this "plausibility standard," a "complaint . . . does not need

---

[3]    Plaintiffs also purport to assert a claim for "Injunctive Relief" in Count VI.  Injunctive relief,
however, is a form of relief, not an independent claim for relief, and, accordingly, must be dismissed
if the claims for relief in the complaint are dismissed.  *See, e.g.*, *O Zon Inc. v. Charles*, 272 F. Supp.
2d 307, 312 (S.D.N.Y. 2003) (RLE) (dismissing claim for "injunctive relief" where other claims
were insufficient, noting: "'There is no 'injunctive' cause of action under New York or federal law.
Instead, defendants must allege some wrongful conduct on the part of plaintiff for which their
requested injunction is an appropriate remedy.'") (quoting *Reuben H. Donnelley Corp. v. Mark I
Mktg. Corp.*, 893 F. Supp. 285, 293 (S.D.N.Y. 1995) (WCC)).

detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007), *cert. granted*, __ S.Ct. __ , 2008 WL 336310 (Jun. 16, 2008); *Twombly*, 127 S. Ct. at 1964-65. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). *See Twombly*, 127 S. Ct. at 1965 n.3 ("Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair' notice of the nature of the claim, but also 'grounds' on which the claim rests."). "Factual allegations must be enough to raise a right to relief above the speculative level"; allegations setting forth claims that are merely "conceivable" are insufficient. *Id.* at 1965, 1974. As the Second Circuit has explained, *Twombly* "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal*, 490 F.3d at 157-58. *Accord*, *Matsumura v. Benihana Nat'l Corp*., 542 F. Supp. 2d 245, 251 (S.D.N.Y. 2008) (NRB) (complaint dismissed); *In re Parmalat Sec. Litig.*, 501 F. Supp. 2d at 572 (same).

In short, while on a motion to dismiss the Court must "accept[] all factual allegations in the complaint and draw[] all reasonable inferences in the plaintiff's favor," *ATSI*, 493 F.3d at 98, as the Supreme Court held in *Twombly*, courts had been mistaken in interpreting *Conley* literally as holding that a claim should not be dismissed "'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Twombly*, 127 S. Ct. at 1968 (quoting *Conley*, 355 U.S. at 45-46). As the Court explained, the "no set of facts" "phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: *once a claim has been stated adequately*, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 1969 (emphasis added).

Applying these standards here, it is clear that the First Amended Complaint fails to state any claim upon which relief can be granted.

## I.    Plaintiffs' RICO Claims Fail to State a Claim for Relief

Plaintiffs purport to bring claims under each of section of RICO – 18 U.S.C. § 1962(a), (b), (c) & (d).  None of the claims passes muster.  As explained below, the complaint fails to allege a "racketeering activity" by SBS; fails to allege scienter with the specificity required by Rule 9(b) (and *Twombly*); fails to allege any "enterprise" distinct from the defendants, as required by § 1962(c); fails to allege that SBS participated in the operation of an enterprise, as required by § 1962(c); fails to allege that SBS "use[d] or invest[ed] . . . income" from a racketeering activity as required by § 1962(a); fails to allege an injury from the "acquisition or maintenance" of an "enterprise," as required by § 1962(b); and fails to allege any facts supporting a claim of conspiracy to violate RICO, as required by § 1962(d) and Rule 9(b), FED. R. CIV. P.  In short, plaintiffs' complaint is a prime example of what the courts repeatedly have warned against – the conclusory parroting of RICO's language, without the specific factual allegations that Rule 9(b) (and *Twombly*) require.  *See Cedar Swamp Holdings, Inc. v. Zaman*, 487 F. Supp. 2d 444 (S.D.N.Y. 2007) (LAK) (because "[a]llegations of RICO violations not only have a stigmatizing effect on those named as defendants, but carry also the possibility of treble damages," ordinary fraud claims disguised as RICO claims "should be flushed out at early stages of the litigation.") (citations and alterations omitted); *Zaro Licensing v. Cinmar, Inc.*, 779 F. Supp. 276, 284 (S.D.N.Y. 1991) (RWS) ("RICO is a specialized statute requiring a particular configuration of elements . . . Parroting statutory language while generally referring the reader back to the previous 100 paragraphs in a complaint is inadequate.") (citation omitted).

A.    **Plaintiffs Have Failed to Allege a Section 1962(c) Claim**

    1.    **Plaintiffs Have Failed to Allege "Racketeering Activity" Because Their Allegations of Mail and Wire Fraud Are Insufficient**

Plaintiffs allege that "Defendants" "caus[ed] matters to be mailed and sounds to be transmitted by means of wire communications," including "acts of mail fraud" and "wire fraud," "each of which," plaintiffs allege, "constituted 'racketeering activity' within the meaning of 18 U.S.C. § 1961(1)"; *i.e.*, the "airing of scam contests" and the "mailing of invoices reflecting improper charges." (FAC ¶¶ 106-09). As explained below, plaintiffs' allegation of scienter fails to meet the heightened pleading requirement of FED. R. CIV. P. 9(b) (and the "plausibility standard" of *Twombly*) applicable to RICO mail and wire fraud claims.

Although Rule 9(b) provides that scienter "may be averred generally," it is black letter law that "plaintiffs are still required to plead the factual basis which gives rise to a *'strong inference'* of fraudulent intent." *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990) (emphasis added). "This is accomplished by alleging facts indicating that the defendants had both motive and opportunity to commit fraud or facts that amount to strong circumstantial evidence of conscious misbehavior or recklessness." *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*, 479 F. Supp. 2d 349, 360 (S.D.N.Y. 2007) (LAK). Allegations that a defendant "knew" of another's fraudulent behavior cannot be conclusory, and mere suspicions that a fraud may have occurred will not suffice. For example, the Second Circuit affirmed dismissal of a complaint where the "plaintiffs pleaded that Price Waterhouse, as NPA's financial auditor, knew of the partnerships' impending financial difficulties, but nevertheless continued to aver that financial projections in subsequent partnership offerings were reasonable" but "fail[ed] to allege particulars regarding Price Waterhouse's purported discovery that NPA's net worth was declining." *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d

674, 677 (2d Cir. 1991).[4]  Finally, where allegations of fraud are equally consistent with legitimate behavior, they fail to satisfy the requirements for pleading a claim for fraud.[5]

Here, plaintiffs' allegations do not come close to giving rise to a "strong inference" of fraudulent intent by SBS.  The *only* specific factual allegations as to SBS are that Mr. Vega read a promotion and telephone number on the air and urged listeners to call it.  Such allegations allege no more than that SBS was broadcasting an advertisement for All Star, and on their face do not suggest wrongdoing, let alone intentional wrongdoing.  Moreover, plaintiffs' bald allegations of scienter are flatly contradicted by the express statement played after each ad stating that it was "a paid advertisement," that it was a "promotion and offer  . . . made by the advertiser alone," that it was "not sponsored by Mega 97.9," that "Mega accepts no responsibility for the advertiser's fulfillment of the promotion," that "[a]ny claims should be addressed to the advertiser, not to Mega 97.9," and that "[a]dministrative charges will apply."  (*See* p. 2, *supra*).

The remaining allegations attempting to link SBS into the "scheme" are conclusory and speculative.  Thus, plaintiffs allege that SBS "creat[ed] and implement[ed] scam radio contests"

---

[4]    *See also Inn Chu Trading Co., Ltd. v. Sara Lee Corp.*, 810 F. Supp. 501, 507 (S.D.N.Y. 1992) (RLC) (allegations that defendants knowingly made false assurances to induce plaintiff to provide additional financing, and supporting factual allegations that defendants deceptively procured sales information prior to a meeting and used it in planning to terminate plaintiff's license, held insufficient to state a claim for fraud because "[m]ere suspicions that a fraud may have occurred are not sufficient.").

[5]    *See First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 179 (2d Cir. 2004) (affirming dismissal of RICO claim based on wire fraud where, *inter alia*, "there is nothing in the record to support the allegation that when Asfar wired monies to Sohrab, she was sending him his own assets in an effort to help him conceal them, rather than sending him gifts of money like those that she routinely sent to Sohrab's siblings during the same period"); *Fraternity Fund*, 479 F. Supp. 2d at 364 (granting motions to dismiss claims of aiding and abetting fraud, noting that the allegations were "equally consistent with an inference of fraud and with an inference that Beacon Hill used the spreadsheet in good faith as a way initially to determine the approximate effect interest rate changes had on the fund's investments"); *Osrecovery, Inc. v. One Groupe Int'l, Inc.*, 229 F.R.D. 456, 458 (S.D.N.Y. 2005) (LAK) (allegations that features of a tiered account system gave defendants anonymous and unlimited access to and control of plaintiffs' funds held insufficient to plead conscious misbehavior or recklessness where such features could be perfectly legitimate).

(FAC ¶ 71), but fail to make a single supporting factual allegation.  Equally conclusory and specu-

lative is their allegation that fees could not have been collected by All Star "without the consent,

knowledge and participation of Defendant SBS."  *Id.*

Rule 9(b) "is designed to provide a defendant with fair notice of a plaintiff's claim, to safe-

guard a defendant's reputation from 'improvident charges of wrongdoing,' and to protect a defen-

dant against the institution of a strike suit."  *O'Brien*, 936 F.2d at 676.  That is exactly what would

happen here if plaintiffs' speculative, conclusory allegations of fraud as to SBS are allowed to stand.

Particularly given the well-established rule that "[g]enerally, there is no liability of a media publica-

tion, such as a newspaper, which runs a false advertisement,"[6] Rule 9(b) requires that plaintiffs make

far more specific allegations of fraudulent intent than those plaintiffs allege here before they are

permitted to launch a RICO claim against a radio station for broadcasting another person's adver-

tisement.

---

[6]    *McCarthy on Trademarks and Unfair Competition* § 27:70 (4th ed. 2008) (citing *Pittman v. Dow Jones & Co.*, 662 F. Supp. 921, 922 (E.D. La. 1987), *aff'd*, 834 F.2d 1171 (5th Cir. 1987) ("[A] newspaper has no duty, whether by way of tort or contract, to investigate the accuracy of advertisements placed with it which are directed to the general public, unless the newspaper undertakes to guarantee the soundness of the products advertised.")).  *See also Suarez v. Underwood*, 103 Misc.2d 445, 446, 448 426 N.Y.S.2d 208 (Queens Cnty. Sup. Ct. 1980), *aff'd* 84 A.D.2d 787, 449 N.Y.S.2d 438 (2d Dep't 1981) (rejecting conspiracy claim asserting that Newsday "falsely and fraudulently" made representations to plaintiff through written advertisements of a co-defendant); *Pressler v. Dow Jones & Co., Inc.*, 88 A.D.2d 928, 450 N.Y.S.2d 884 (2d Dep't 1982) ("a newspaper has no duty to investigate each of the advertisers who purchases space in its publica-tion"); *Goldstein v. Garlick*, 65 Misc.2d 538, 543 (Queens Cnty. Sup. Ct. 1971) (granting summary judgment for newspapers dismissing claim of conspiracy to publish misleading advertisements and rejecting notion that any "onerous burden be placed upon newspapers under ordinary circumstances to conduct investigations in order to determine the effect of a questioned advertisement."); *Park v. Korea Radio USA, Inc.*, 2007 WL 3358139, *1-3, *6-7 (Cal App. 2007) (unpublished) (affirming dismissal of claim alleging that radio stations gave hosts of investment shows paid advertisement time to host a show on investments and financial planning, noting that "defendants did not formally endorse the hosts and their companies," but instead "simply provided a forum for their investment programs" and "merely performed their traditional roles of broadcasting programs to the public," and rejecting "plaintiffs' allegations about defendants' specific involvement in the production of the programs (create content, provide voice commentary, role play)" because "that is what a broadcaster typically does: create and produce a program.").

**2.     Plaintiffs Have Failed to Allege, Nor Can They, that Defendants – the "Persons" – Are Distinct from the "Enterprise"**

Section 1962(c) prohibits "any person employed by or associated with any enterprise . . . to conduct . . . such enterprise's affairs through a pattern of racketeering activity. . . ." 18 U.S.C. § 1962(c). As the Second Circuit has held, a corporation may not be both the enterprise and the person conducting the affairs of the enterprise through a pattern of racketeering activity.

> [R]equiring a complaint to distinguish between the enterprise and the person conducting the affairs of that enterprise in the prohibited manner is supported by the plain language of section 1962(c), which clearly envisions two entities. Moreover, requiring a distinction between the enterprise and the person comports with legislative intent and policy. Such a distinction focuses the section on the culpable party and recognizes that the enterprise itself is often a passive instrument or victim of the racketeering activity.

*Bennett v. United States Trust Co.*, 770 F.2d 308, 315 (2d Cir. 1985). *Accord*, *Manhattan Telecomm's Corp., Inc. v. DialAmerica Mktg., Inc.*, 156 F. Supp. 2d 376, 381 (S.D.N.Y. 2001) (SAS) ("the enterprise cannot merely consist of the named defendants").

Here, the alleged RICO "persons" – All Star and SBS – are the exact same entities alleged to be the RICO "enterprises." (FAC ¶ 103). Accordingly, plaintiffs' § 1962(c) claim fails to state a claim for relief.

**3.     Plaintiffs Have Failed to Allege that SBS Participated in the Operation or Management of an Enterprise**

Although plaintiffs' violation of the person/enterprise rule alone mandates that their claims be dismissed, a possible (albeit implausible) reading of the complaint is that they are alleging that SBS was involved in the All Star enterprise, and vice-versa. But that theory also fails, because Section 1962(c) also requires that the defendant "conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs," which, as the Supreme Court has held, requires the defendant to "participate in the operation or management of the enterprise itself." *Reves v. Ernst & Young,* 507 U.S. 170, 183, 113 S. Ct. 1163, 1172 (1993). *Accord*, *West 79th St. Corp. v. Congregation Kahl Minchas Chinuch*, 2004 U.S. Dist. LEXIS 19501, *13 (S.D.N.Y. 2004) (unpublished) (RWS)

(dismissing RICO claims, noting that "Section 1962(c) imposes liability only upon defendants who operate or manage RICO enterprises").[7]  In other words, RICO liability under § 1962(c) "may not be imposed on a defendant who merely carries on its own professional activities."  *Dietrich v. Bauer*, 76 F. Supp. 2d 312, 347 (S.D.N.Y. 1999) (RWS).  Yet that is all that plaintiffs allege here – that Mr. Vega read All Star's advertisement on the air, which is the normal business of a radio station.  And even if All Star could be considered an "enterprise," there is no allegation that SBS directed or participated in the operation of All Star.  Accordingly, for these additional reasons, plaintiffs' § 1962(c) claim should be dismissed.

### B.    The Remaining RICO Claims Fail To State a Claim Upon Which Relief Can Be Granted

#### 1.    Plaintiffs Have Failed to Allege a Section 1962(a) Claim

Section 1962(a) prohibits the "use or invest[ment]" of income derived from "a pattern of racketeering activity."  18 U.S.C. § 1962(a).  In *Ouaknine v. MacFarlane*, 897 F.2d 75, 82-83 (2d Cir. 1990), the Second Circuit held that "because the conduct constituting a violation of § 1962(a) is investment of racketeering income, a plaintiff must allege injury from the defendant's investment of the racketeering income to recover under 1962(a)."  That is, as Judge Sweet explained in granting a Rule 12(b)(6) motion, the plaintiff must allege "how" it was injured *as a result of* the defendant's investment of the racketeering income.  *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 657 (S.D.N.Y. 1996), *aff'd* 113 F.3d 1229 (2d Cir. 1997) ("Plaintiffs' conclusory allegation that Defendants 'used or invested' income received from VSC, is insufficient because it fails to show how that use or investment injured them or any member of the proposed class.") (internal citation omitted).  The injury resulting from a violation of § 1962(a) "must be distinct from the injury

---

[7]    Pursuant to Judge Kaplan's Motion Rules and Procedures, a copy of this decision, and all other unpublished decisions cited herein, are attached together in alphabetical order as Exhibit 1 to SBS's Notice of Motion to Dismiss the First Amended Complaint.  A copy of the First Amended Complaint is attached as Exhibit 2 to SBS's Notice of Motion.

allegedly caused by the predicate acts." *Id.* ("the assertion that Katzman was injured through the alleged mail fraud is not an adequate substitute because the required allegation of injury from the use or investment of racketeering income must be distinct from the injury allegedly caused by the predicate acts.") (internal citation omitted). And, as courts "have repeatedly held . . . the injury causation requirement of 1962(a) is not satisfied by allegations that a defendant, which is also the enterprise, invested the racketeering income in its general operations, thereby permitting it to continue its pattern of racketeering and cause further injury." *Id.*

Here, plaintiffs merely allege that "both Defendant SBS and Defendant All Star received income directly from the pattern of racketeering activity and used the income or its proceeds for their own operation and for themselves." (FAC ¶ 104). Plaintiffs fail to allege *any* "injury from the defendant['s] investment of the racketeering income" – as opposed to from paying the administrative fee to All Star – let alone allege "how" they were injured as a result of the investment. *Ouaknine*, 897 F.2d at 82-83; *Katzman*, 167 F.R.D. at 657. Accordingly, plaintiffs' § 1962(a) claim fails to state a claim upon which relief can be granted.

### 2. Plaintiffs Have Failed to Allege a Section 1962(b) Claim

Assuming for purposes of this motion that plaintiffs purport to assert a claim under Section 1962(b), they have failed to do so.[8] To state a claim under § 1962(b), "a plaintiff must allege an injury resulting from the acquisition or control of an enterprise" which, in like fashion to the injury required for a subsection (a) claim, must be separate from injury resulting from the predicate acts. *Katzman*, 167 F.R.D. at 657 (internal citation omitted). Plaintiffs' complaint makes no such

---

[8]     Section 1962(b) prohibits the "acqui[sition] or maint[enance]" of an enterprise "through a pattern of racketeering activity." 18 U.S.C. § 1962(b). The only mention of this section in the complaint is the allegation that "Defendant SBS and Defendant All Star are or were enterprises engaged in commerce, and, in violation of 18 U.S.C. 1962(b), the enterprises and patterns of racketeering activity directly affected interstate commerce." (FAC ¶ 105). This language tracks subsection (c), not (b).

allegation. Rather, the only injuries alleged are damages in the form of administrative fees paid to All Star. Accordingly, plaintiffs' § 1962(b) claim fails as a matter of law.

### 3.    Plaintiffs Have Failed To Allege a Section 1962(d) Claim

Plaintiffs' § 1962(d) fares no better. Section 1962(d) prohibits any conspiracy to commit a RICO violation. 18 U.S.C. § 1962(d). To begin with, because plaintiffs' § 1962 (a), (b), and (c) claims fail as a matter of law, so, too, do their conspiracy claims. *First Capital Mgmt., Inc. v. Brickellbush, Inc.*, 219 F. Supp. 2d 576, 588 (S.D.N.Y. 2002) (LAK) ("A claim under Section 1962(d) fails as a matter of law if the substantive claims based on the other subsections are defective."), *aff'd*, 385 F.3d 159 (2d Cir. 2004); *Katzman*, 167 F.R.D. at 658.

What is more, plaintiffs' § 1962(d) claim should be dismissed for the additional reason that it has not been pleaded with sufficient particularity. In *Hecht v. Commerce Clearing House, Inc.* 897 F.2d 21, 25 (2d Cir. 1990), the Second Circuit affirmed dismissal of a RICO conspiracy claim where the complaint merely alleged that defendants were "conspiring with agents, servants, and employees and others to conduct their affairs through a pattern of racketeering activity . . . [and were] conspiring to violate provisions of section 1962(a), (b) and (c)." (internal citation omitted). The Court noted that the complaint

> does not allege facts implying any agreement involving each of the defendants to commit at least two predicate acts. Because the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement.

*Id. Accord, Morin v. Trupin*, 711 F. Supp. 97, 111 (S.D.N.Y. 1989) (RWS) (to state a claim of RICO conspiracy, the complaint must plead an agreement and that "defendants understood the scope of the enterprise and knowingly agreed to further its affairs through the commission of various offenses").

Plaintiffs' allegations fall woefully short of these requirements of specificity. Thus, their only allegations of conspiracy are the following conclusory statements:

"Defendant SBS conspired with Defendant All Star to violate the provisions of 18 U.S.C. 1962(a)."  (FAC ¶ 104).

"Defendant All Star also conspired with Defendant SBS to violate the provisions [of] 18 U.S.C. 1962(a)."  *Id.*

"Defendants conducted or participated in the conduct of the affairs of the enterprises through a pattern of predicate acts of mail fraud and wire fraud and conspiracy to commit mail fraud and wire fraud . . . and conspired to violate Section 1962(c) . . . ." (FAC ¶ 106).

Plaintiffs do not allege – let alone "allege specifically" – "facts implying an[] agreement." *Hecht*, 897 F.2d at 25.  Nor do they allege that defendants understood the scope of the enterprise and knowingly agreed to further it through the commission of RICO predicate offenses.  *Morin*, 711 F. Supp. at 111.

In short, plaintiffs' allegations are nothing more than bare assertions that defendants "conspired" with each other.  Accordingly, their claim of a § 1962(d) RICO conspiracy fails to satisfy the pleading requirements of Rule 9(b).

## II.    **Plaintiffs' New York General Business Law Claim Fails to State a Claim for Relief**

Plaintiffs' claim under New York General Business Law Section 349 fails to state a claim for relief against SBS because the allegations fall squarely within the statute's express exclusion of claims against broadcasters for broadcasting advertisers' ads:  "*Nothing* in this section shall apply to any television or *radio broadcasting station* or to any publisher or printer of a newspaper, magazine or other form of printed advertising, *who broadcasts*, publishes, or prints the advertisement."  N.Y. GEN. BUS. LAW § 349(e) (emphasis added).

The only specific allegations against SBS, a radio station, are that it broadcast All Star's allegedly deceptive ad.  (FAC ¶¶ 19, 71).  Applying the clear exclusionary language of subsection (e), plaintiffs' claim under N.Y. GEN. BUS. LAW § 349 should therefore be dismissed.  *See New York Electrolysis Ass'n Inc. v. Bell Atlantic Yellow Pages Co.*, 2000 NY Misc. LEXIS 534 (Saratoga Cnty. Sup. Ct. Dec. 11, 2000) (dismissing Section 349 claim against Bell Atlantic Yellow Pages

based on an ad published in the Yellow Pages, noting that the statute, "despite its expansive reach 'to virtually all economic activity,' includes a 'categorized exemption' in subdivision (e)") (quoting *Karlin v. IVF America, Inc.*, 93 N.Y.2d 282, 290, 690 N.Y.S.2d 495, 498 (1999)).  *See also* S. 953-B, Greenberg (prepared by Legislative Bureau of Attorney General) ("The bill exempts television and radio broadcasting stations and newspapers, magazine and other advertising media from its provisions and thus places the responsibility directly upon the person or firm making a fraudulent or misleading claim.").

### III.    Plaintiffs' New Jersey Consumer Fraud Act Claim Fails to State a Claim for Relief

#### A.    Plaintiffs' Claim Is Barred by the Exclusion for Radio Broadcasting Companies

The New Jersey Consumer Fraud Act ("NJCFA") expressly provides that "nothing herein contained shall apply to the . . . owner or operator of a radio or television station which disseminates such advertisement when the owner, publisher, or operator has no knowledge of the intent, design or purpose of the advertiser."  N.J.S.A. § 56:8-2.  Plaintiffs do not allege that SBS had knowledge of the intent, design or purpose of the advertiser.  (*See* FAC ¶¶ 83-91).  At most, the complaint alleges that SBS was in a "profit-making scheme" with All Star and that the "fees paid by callers to Defendant All Star could not have occurred without the consent, knowledge and participation of Defendant SBS."  (FAC ¶¶ 70-71).  These conclusory allegations do not set forth "[f]actual allegations [sufficient] enough to raise a right to relief above the speculative level," as required by *Twombly*, 127 S. Ct. at 1965, let alone met the heightened Rule 9(b) pleading requirements that apply to NJCFA claims that, as here, sound in fraud.  *Meadowlands Investments, LLC v. CIBC World Markets Corp.*, 2005 U.S. Dist. LEXIS 21102, *20 (S.D.N.Y. 2005) (DAB) ("All elements under the New Jersey Consumer Fraud Act must comply with the particularity requirements of Fed. R. Civ. P. 9(b)."); *Zaro Licensing*, 779 F. Supp. at 278.  Accordingly, just as with their claim under

New York General Business Law § 349, plaintiffs' NJCFA claim against SBS is barred by the statutory exclusion for claims against broadcasters.

### B.    Plaintiffs Have Failed to Allege a Claim Under Section 56:8-2.3

Plaintiffs allege (FAC ¶ 83) a violation of Section 56:8-2.3 of the NJCFA, which prohibits the "notification to any person by any means, as a part of an advertising plan or scheme, that *he has won* a prize and requiring him to do any act, purchase any other item or submit to a sales promotion effort is an unlawful practice and a violation of the act to which this act is a supplement."[9] (emphasis added). Plaintiffs, however, do *not* allege that SBS told either one of them that she "has won a prize." Rather, they allege that plaintiffs called *All Star* and were told by *All Star* that they had won a prize. (FAC ¶¶ 31, 32, 54, 55). Nor do plaintiffs allege that SBS "requir[ed them] to do any act, purchase any item, or submit to a sales promotion effort." All that plaintiffs allege is that SBS's disc jockey stated that contest winners could win a trip. (FAC ¶¶ 49, 52). Accordingly, plaintiffs' complaint fails to state a claim for violation of Section 56:8-2.3 of the NJCFA.

## IV.    Plaintiffs' Common Law Fraud Claim Fails to State a Claim for Relief

To state a claim for common law fraud under New York law, the plaintiff must allege "(a) an express representation of a material fact; (b) that this representation was false; (c) that the representation was made with the intent to defraud; (d) that [plaintiffs] reasonably relied upon this representation; and (e) that [plaintiffs] suffered damages as a result." *Zaro Licensing*, 779 F. Supp. at 284; *Gaidon v. Guardian Life Ins. Co. of America*, 94 N.Y.2d 330, 348, 704 N.Y.S.2d 177, 185 (N.Y. 1999). As the New York Court of Appeals has held, "[a] practice may carry the capacity to

---

[9]    Plaintiffs also allege that SBS violated "Federal Communications Commission rules and regulations, including but not limited to, 47 C.F.R. § 73.1216," and that such violation amounts to a *per se* violation of the New Jersey Consumer Fraud Act. (FAC ¶ 73, 90). We are aware of no authority holding that violations of federal rules or regulations constitute a *per se* violation of the New Jersey statute; therefore a ruling to this effect by the FCC, even assuming it had primary jurisdiction as to this narrow aspect of the First Amended Complaint, would have no bearing on the viability of Count II on its face.

mislead or deceive a reasonable person but not be fraudulent. . . . Fraud is wrongful enough to occupy a civil classification just short of criminal conduct." *Gaidon*, 94 N.Y.2d at 348, 704 N.Y.S.2d. at 185. Plaintiffs' claims should be dismissed because they fail to satisfy Rule 9(b)'s standard for pleading fraud. In particular, they fail adequately to plead the elements of scienter and material falsity.[10]

As explained above in connection with plaintiffs' RICO claims, plaintiffs' allegations of scienter fail to satisfy Rule 9(b)'s pleading standard. For the same reason, they fail to satisfy that standard for pleading common law fraud. *See Zaro Licensing,* 779 F. Supp. at 285 (dismissing common law fraud claim for failure to satisfy Rule 9(b)'s scienter requirement). Accordingly, for this reason alone, plaintiffs' common law fraud claim should be dismissed.

Plaintiffs' fraud claim also fails to meet Rule 9(b)'s standard for pleading "material falsity." The only injury that plaintiffs allege, and the only relief they seek for themselves, is the amount of the fee they paid to All Star. (FAC ¶¶ 5, 39-40, 48, 60-61, 68). Yet plaintiffs were told by SBS *during the broadcast* and *before* they paid any fees that "administrative charges apply." (*See* p. 2, *supra*). Accordingly, the statement on the air that the vacations were "all inclusive" and "all expense paid" were not materially false to plaintiffs as they related to the payment of the fee because plaintiffs paid the fee knowing the truth that a fee would have to be paid. Any other alleged false statements caused no injury to plaintiffs because plaintiffs do not allege that they paid any money other than the fee or that they went on the vacation.

---

[10]    The Court need not decide whether the law of New York, where the broadcast was made from, or the law of New Jersey, where Ms. Sepulveda heard the broadcast (FAC ¶ 49), applies, because both states' laws require a showing of scienter and material falsity. *See Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 172-73 (2005) ("To establish common-law fraud, a plaintiff must prove: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages.") (citation omitted).

**V.**     **Plaintiffs' Unjust Enrichment Claim Fails to State a Claim for Relief**

To state a claim for unjust enrichment, the plaintiff "must show that (1) the other party was enriched (2) at that party's expense, and (3) that 'it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered.'"  *Citibank, N.A. v. Walker*, 12 A.D.3d 480, 481, 787 N.Y.S.2d 48, 49 (2d Dep't 2004) (quoting *Paramount Film Distrib. Corp. v. State of New York*, 30 N.Y.2d 415, 421, 334 N.Y.S.2d 388, 393 (1972)).  *See In re JetBlue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 329 (E.D.N.Y. 2005) (dismissing complaint); *Redtail Leasing v. Thrasher (In re Motel 6 Secur. Litig.),* 1997 U.S. Dist. LEXIS 3909, *21 (S.D.N.Y. Apr. 2, 1997) (JFK) (same).  An unjust enrichment claim "is undoubtedly equitable" and requires determination of "whether in *all the circumstances* it would be against equity and good conscience to permit defendant to retain the benefit."  *Lake Minnewaska Mountain Houses, Inc. v. Rekis*, 259 A.D.2d 797, 798, 686 N.Y.S.2d 186, 188 (3d Dep't 1999) (emphasis added); *Paramount*, 30 N.Y.2d at 421, 334 N.Y.S.2d at 393.  Although "a plaintiff need not be in privity with the defendant to state a claim for unjust enrichment," an unjust enrichment claim "clearly contemplate[s] that a defendant and plaintiff must have had some type of direct dealings, or an actual, substantive relationship."  *Sperry v. Crompton Corp.*, 8 N.Y.3d 204, 215, 831 N.Y.S.2d 760, 766 (N.Y. 2007); *RedTail,* 1997 U.S. Dist. LEXIS, at *21.[11]

---

[11]     The Court need not decide whether the law of New York, where the broadcast was made and SBS's stations are located, or the law of Florida, where SBS has its principal place of business (FAC ¶ 15), applies, because New York and Florida law are not materially different with respect to the issues raised by this motion.  *See People's Nat'l Bank of Commerce v. First Union Nat'l Bank of Florida, N.A.*, 667 So. 2d 876, 879 (Fla. Dist. Ct. App. 1996) (affirming dismissal of unjust enrichment claim where plaintiff did not allege that it had directly conferred a benefit on defendants) (citation omitted); *Huntsman Packaging Corp. v. Kerry Packaging Corp.*, 992 F. Supp. 1439, 1446 (M.D. Fla. 1998) (dismissing unjust enrichment claim as to defendant to whom plaintiff did not allege it had directly conferred a benefit).

A.    **Plaintiffs Fail to Allege Any Direct Dealings or
      Substantive Relationship with SBS**

Courts routinely have dismissed unjust enrichment claims where the plaintiff failed to allege

that the plaintiff had "direct dealings, or an actual, substantive relationship" with the defendant.  *See

Sperry,* 8 N.Y.3d at 215-16, 831 N.Y.S.2d at 766 (affirming dismissal of unjust enrichment claim by

plaintiff tire purchasers against defendant rubber chemical manufacturers); *State ex rel. Spitzer v.

Daicel Chem. Indus., Ltd.,* 42 A.D.3d 301, 304, 840 N.Y.S.2d 8, 12 (1st Dep't 2007) (dismissing

unjust enrichment claim by plaintiff purchasers of food containing sorbates against defendant

manufacturers of sorbates); *Redtail,* 1997 U.S. Dist. LEXIS 3989, at **21-22 (dismissing unjust

enrichment claim where plaintiff investors did not allege direct dealings or an actual, substantive

relationship with defendant alleged insider traders, but instead only traded contemporaneously with

them); *JetBlue,* 379 F. Supp. 2d at 329 (dismissing unjust enrichment claim by airline passengers

where plaintiffs failed to allege any "direct dealings or an actual, substantive relationship" with

company that mined passenger data from defendant airline).

Here, plaintiffs make no allegations of any direct dealings or substantive relationship with

SBS.  All they allege is that, other than listening to the radio broadcast, (1) they were connected with

All Star (*not* SBS) when they called for details on the advertised vacation packages (FAC ¶¶ 31, 54);

(2) they gave an All Star (*not* SBS) customer representative their credit card numbers and paid $399

to All Star (FAC ¶¶ 39-40, 60-61); (3) they requested a refund from All Star (*not* SBS) (FAC ¶¶ 46,

66); and (4) an invoice was mailed by All Star (*not* SBS) to each plaintiff for costs related to the

advertised vacation promotions.  (FAC ¶¶ 45, 65).

To suggest, for purposes of an unjust enrichment claim, that a radio broadcasting company –

here, "the largest publicly traded Hispanic controlled media and entertainment company in the

United States" (FAC ¶ 19) – engages in direct dealings or a substantive relationship with each of the

thousands of listeners who tune in to its broadcast, would expand the claim far beyond its moorings

in "the umbrella of quasi-contract," *JetBlue*, 379 F. Supp. 2d at 329, and would run afoul of the well-settled rule that liability is not imposed on the media for running ads (*see* p. 9 n.6, *supra*).  Moreover, just as in *Sperry*, 8 N.Y.3d at 216, 831 N.Y.S.2d at 764, where the Court of Appeals held that the plaintiffs could not "substitute unjust enrichment to avoid the statutory limitations on the cause of action created by the Legislature" – there, the indirect purchaser ban in the Donnelly Act – so too, here, plaintiffs should not be permitted to substitute unjust enrichment for New York and New Jersey's ban on suits against broadcasters.

### B.  Plaintiffs Fail to Allege that Any Money Paid to All Star Enriched SBS

Plaintiffs' claim for unjust enrichment against SBS fails to state a claim for relief for the separate and independent reason that it does not allege that the $399 paid to All Star in any way enriched *SBS*.  Significantly, "it is not enough that the defendant received a benefit from the *activities* of the plaintiff."  *JetBlue,* 379 F. Supp. 2d at 329 (citing *Michele Pommier Models, Inc. v. Men Women NY Model Management, Inc.*, 14 F. Supp. 2d 331, 338 (S.D.N.Y.1998), *aff'd,* 173 F.3d 845 (2d Cir. 1999)).  If the plaintiff acted at the behest of someone other than the defendant, she "must look to that person for recovery."  *Id.*

Plaintiffs allege that the benefit unjustly conferred was the payment of fees for the vacation packages, which they allege they paid directly to All Star (*not* SBS) while on the phone with an All Star (*not* SBS) representative (FAC ¶¶ 39-40, 60-61).  Plaintiffs later received an invoice from All Star (*not* SBS) for the fees. (FAC ¶¶ 46, 66).  Moreover, that plaintiffs allege that they sought reimbursement from All Star (*not* SBS) confirms their recognition that it was All Star (*not* SBS) that was enriched by the fees they paid.  To be sure, plaintiffs allege that SBS received "untold advertising revenue."  (FAC ¶ 71).  But there is no allegation that *plaintiffs* paid SBS any advertising revenue; nor could there be since it is the advertiser, not the listener, that pays for advertising.

## <u>CONCLUSION</u>

For the foregoing reasons, plaintiffs' claims against SBS should be dismissed in their entirety

with prejudice.

Dated:  July 3, 2008
        New York, NY

                       KAYE SCHOLER LLP


Of Counsel                    By_____/s_____
                               Jacquelyn L. Sumer

    William C. Zifchak
    Richard A. De Sevo              425 Park Avenue
                               New York, NY  10025
                               Tel. (212) 836-8000
                               Fax (212) 836-8689

                         *Attorneys for Defendant*
                          *Spanish Broadcasting System, Inc.*