UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
GABRIELA CARMONA and EDNA
SEPULVEDA,

                Plaintiffs,

        -against-                                08 Civ. 4475 (LAK)

SPANISH BROADCASTING SYSTEM, INC. and
ALL STAR VACATION MARKETING GROUP,
INC.,

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

Appearances:

                Jeffery I. Carton
                Michael A. Berg
                Jerome Noll
                MEISELMAN, DENLEA, PACKMAN,
                CARTON & EBERZ P.C.
                *Attorneys for Plaintiffs*

                Jacquelyn L. Sumer
                KAYE SCHOLER LLP
                *Attorneys for Defendant*
                *Spanish Broadcasting System, Inc.*

                Robertson D. Beckerlegge
                BAKER & HOSTETLER LLP
                *Attorneys for Defendant All Star*
                *Vacation Marketing Group, Inc.*

LEWIS A. KAPLAN, *District Judge.*

This purported class action alleges that the defendants, a radio station and a travel services company, defrauded plaintiffs by inducing them to part with $399 each by promising them "all expenses paid trips" only to reveal after the plaintiffs parted with their cash that the supposedly free trips did not include expensive air fares.  Plaintiffs seek damage and injunctive relief under New York and New Jersey consumer protection laws and the Racketeer Influenced and Corrupt Organizations Act[1] ("RICO") and on the basis of common law fraud and unjust enrichment. Each defendant has moved to dismiss the complaint pursuant to Fed. R. Civ. P. 8(a), 9(b) and 12(b)(6). Defendant All Star Vacation Marketing Group, Inc. ("All Star") moves also to strike paragraph 72 of the amended complaint pursuant to Fed. R. Civ. P. 12(f) on the ground that the allegation contained therein supposedly is immaterial and impertinent.

*Facts*

The factual allegations of the complaint are assumed to be true for the purpose of deciding defendants' motions to dismiss.[2]

Plaintiffs Gabriela Carmona, a resident and citizen of New York, and Edna Sepulveda, a resident and citizen of New Jersey, are listeners of Spanish Broadcasting System, Inc. ("SBS")'s Spanish language radio station, 97.9 FM, known as "La Mega."[3]  Both allege that, on different dates,

---

[1]     18 U.S.C. §§ 1961 *et seq.*

[2]     *Gonzalez v. Caballero*, 572 F. Supp. 2d 463, 466 (S.D.N.Y. 2008); *See also Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir. 1996).

[3]     According to the complaint, SBS is the largest publicly traded Hispanic-controlled media and entertainment company in the United States.  SBS owns and operates twenty radio

they heard a La Mega disc jockey announce a trivia contest in which a limited number of radio listeners who called in with the correct answer would win an "all expense paid" and "all included" trip to one of several locations.[4]  The contest was held in conjunction with All Star, a privately held corporation based in Miami that promotes tour and vacation packages to various destinations inside and outside of the United States and does business under a variety of names, including Next Level Tours.[5]

The complaint asserts that the trivia contest was a hoax designed to generate calls from listeners and that there were no actual "winners."  Instead, everyone who called in was offered the "all inclusive" prize with one string attached: the callers had to pay $399 in "administrative fees" or "taxes."  Only after paying this amount did plaintiffs learn that the "all inclusive" trips did not include airfare and thus were not, from plaintiffs' point of view, "all inclusive" at all.

The experience of Gabriela Carmona allegedly was typical.  She was listening to La Mega on or about April 13, 2008 when she heard "DJ Vega" announce a trivia contest, the first thirty-five winners of which would receive an "all inclusive" trip to one of four destinations.  DJ Vega then introduced the audience to his "friend Alfredo" and explained that the contest was made available in collaboration with "Alfredo" and "the tour operator."  Alfredo and the tour operator would handle the travel arrangements once the contest winners were announced.[6]

---

stations in the United States, including New York-based La Mega.  First Amend. Compl. ("Cpt.") ¶ 19.

[4]       Cpt. ¶ 22.

[5]       Cpt. ¶ 20.

[6]       *Id.* ¶ 23.

Carmona knew the answer to the trivia question.  But she did not call at first.  She listened to the broadcast for nearly an hour during which DJ Vega repeatedly entreated listeners to keep calling the number.  When she failed to hear a winner announced, she became surprised that no one yet had answered it correctly.  So she called the number announced in the belief that she was calling La Mega's switchboard.  In fact, Carmona was connected not to La Mega, but to All Star, doing business as Next Level Tours, in Orlando Florida.[7]

A woman answered the phone and immediately told Carmona, "'Congratulations, you're the winner.'"  When Carmona called back after losing the connection, the person answering again also told Ms. Carmona that she was a winner and took Carmona's phone number.  Neither asked her, and she never provided, the answer to the trivia question.[8]  Shortly after her second call, Ms. Carmona received a call from an All Star representative who asked where Ms. Carmona would like to go on her trip.

At that point, Carmona learned that she was speaking to Next Level Tours, the company responsible for "administering" the trip.  The representative assured Carmona that all expenses would be prepaid and that the hotel was all-inclusive whichever destination she chose.  Carmona chose a trip to Punta Cana.[9]

The representative then told Carmona that Carmona would have to pay a "$399 administrative fee" for the trip.  The representative assured Carmona that this would be the only

---

[7]

     *Id.* ¶ 31.

[8]

     *Id.* ¶ 32.

[9]

     *Id.* ¶¶ 35-37.

charge she would have to pay and that every other expense for the"all inclusive" trip was covered. Carmona then charged the $399 fee to her credit card.[10]

Carmona soon became suspicious of paying a fee after winning a supposedly "all inclusive" trip.  She called back and, again, immediately was told, "'Congratulations, you're the winner.'"   During this conversation, Carmona learned for the first time from the Next Level representative that her "all inclusive" trip did not include airfare.

"Stunned" that she just had paid $399 for what she had been told was an all inclusive trip, including airfare, Carmona realized that she had been the "victim of a scam" and that everyone who called the number broadcast by Le Mega was a "winner" as long as they paid the $399 fee. Carmona immediately sought a refund over the phone, but the Next Level Tours representative told her that the company had a "'no refund policy.'"[11]

Around April 16, 2008, Carmona received an invoice from All Star, which reflected the $399 administrative fee charged to Carmona.  The invoice indicated also that Carmona had won a vacation package to Punta Clara for five days and four nights, and a separate vaction to Orlando for three days and two nights.  According to Carmona, the invoice did not state that airfare was not included for either trip.  The mailing included also a brochure from All Star describing various travel destinations and hotels.[12]

Carmona did not take either the trip because the airfare would have cost "thousands

---

[10]      *Id.* ¶¶ 39, 40.

[11]      *Id.* ¶ 41-45.

[12]      *Id.* ¶ 46.

of dollars."[13]


*Discussion*

I.    *The Motion to Dismiss*

        A.    *The Standard*

            To defeat a motion to dismiss, a plaintiff must allege "only enough facts to state a

claim to relief that is plausible on its face."[14]  A court must accept as true the facts alleged in the

complaint and draw all reasonable inferences in favor of the nonmoving party.[15]  At the same time,

"'c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice

to [defeat] a motion to dismiss.'"[16]  A court must apply a "flexible 'plausibility standard,' which

obliges a pleader to amplify a claim with some factual allegations in those contexts where such

amplification is needed to render the claim plausible."[17]  While the plausibility standard does "not

---

[13]

        *Id.* ¶ 48.

        Plaintiff Sepulveda's claims essentially mirror those of Carmona, with two notable
        exceptions.  First, Sepulveda was in New Jersey at all relevant times.  Second, unlike
        Carmona, All Star allegedly told Sepulveda that the $399 she had to pay for her prize was
        for "taxes," not "administrative" fees.  *Id.* ¶ 60.  Like Carmona, Sepulveda was "shocked"
        to learn  when the representative informed her, after she had paid the $399, that airfare was
        not included in the trip.  *Id.* ¶ 63.

[14]

        *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

[15]

        *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir. 1989).

[16]

        *Achtman v. Kirby, McInerney & Squire, LLP,* 464 F.3d 328, 337 (2d Cir. 2006).

[17]

        *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (interpreting *Twombly*).

require heightened fact pleading of specifics,"[18] it does require "factual allegations sufficient 'to raise a right to relief above the speculative level.'"[19]

B.    *Rule 8(a)*

All Star first argues that Counts II-VI of the complaint should be dismissed for failure to comply with Fed. R. Civ. P. 8(a)(2), which requires that a claim for relief contain "a short and plain statement of the claim showing the pleader is entitled to relief."[20]  It relies upon *Discon, Inc. v. Nynex Corp.*[21] for the proposition that "it is not the duty of the Defendants or [the] court to sift through the complaint and guess which factual allegations support which claims."[22]

All Star's contention is without merit.  At the pleading stage, the plaintiff is required only to provide a "'short and plain statement'" that "'give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'"[23]  While perhaps not a thing of beauty, the complaint – and specifically Counts II-VI – satisfy Rule 8(a)(2).  The Court's conclusion in *Discon* that the complaint failed to comply with Rule 8(a) was premised at least in part on the complaint's

---

[18]

    *Twombly*, 550 U.S. at 575.

[19]

    *Boykin v. KeyCorp*, 521 F.3d 202, 213 (2d Cir. 2008) (quoting *Twombl*y, 550 U.S. at 555).

[20]

    Fed. R. Civ. P. 8(a)(2).

[21]

    No. 90-CV-546A(RJA), 1992 WL 193683 (W.D.N.Y. June 23, 1992).

[22]

    *Id.* at *16.

[23]

    *Rehman v. State Univ. of N.Y.*, 2009 U.S. Dist. LEXIS 12897, *9-10 (E.D.N.Y. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512-13 (2002)).

lack of "any coherent organization" and the fact that it was "unduly confusing and lengthy."[24]  Neither factor applies here as the complaint is organized, thirty pages long, and not confusing.  Counts II-VI state adequately plaintiffs' claims for relief and thus satisfy Rule 8(a) and the purpose underpinning it; namely, notice to defendants.

C.    *State Consumer Fraud Act Claims*

1.    *SBS*

New York General Business Law § 349 prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service."[25]  It provides also, however, that  "[n]othing in this section shall apply to any television or radio broadcasting station or to any publisher or printer of a newspaper, magazine or other form of printed advertising, who broadcasts, publishes, or prints the advertisement."[26]

Section 56:8-2 of the New Jersey Consumer Fraud Act[27] similarly states

"The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice; provided,

---

[24]    *Discon*, 1992 U.S. Dist. LEXIS 22722 at *50.

[25]    N.Y. GEN. BUS. LAW § 349(a).

[26]    *Id.* § 349(c).

[27]    N.J.S.A. § 56:8-1 *et seq.*

however, that nothing herein contained shall apply to the owner or publisher of newspapers, magazines, publications or printed matter wherein such advertisement appears, or to the owner or operator of a radio or television station which disseminates such advertisement when the owner, publisher, or operator has no knowledge of the intent, design or purpose of the advertiser."[28]

SBS contends that the trivia contests at issue were advertisements that fall squarely within the broadcaster exceptions of the New York and the New Jersey statutes. Plaintiffs' response is that the complaint does not allege that All Star "ran advertisements on SBS's radio stations, but that SBS and All Star jointly presented on-air programming."[29]

The question whether the trivia contests at issue here were advertisements cannot be resolved on the face of the complaint. Indeed, although the point is unnecessary to the result, it appears likely that SBS would have the burden of proof on the point, thus making dismissal on that basis on the face of the complaint inappropriate.

2.    *All Star*

All Star's sole argument in favor of dismissing plaintiffs' Section 349 and Section 56:8-2 claims against it is that the complaint is unclear. In essence, it contends that the first and second causes of action fail to distinguish adequately which plaintiff is suing under which state law. It seeks dismissal of the complaint so that plaintiffs can identify properly "which plaintiffs assert a

---

[28]    *Id.* § 56:8-2.

[29]    Pl. Br. 32.

claim under the state law appropriate to each for Count I and Count II."[30]

While Counts I and II may not be models of precision, the complaint, read as a whole and in the light most favorable to plaintiffs, adequately states claims for relief under the New York and New Jersey statutes.  As All Star's co-defendant SBS recognized in its motion to dismiss – and without claiming any purported lack of clarity – Count I asserts a claim under the New York statute on behalf of Carmona and all other New York residents who were allegedly defrauded.  Count II, on the other hand, asserts a claim under the New Jersey statute on behalf of Sepulveda and other the alleged New Jersey victims.

D.      *Common Law Fraud*

The fourth cause of action asserts a claim of common law fraud against All Star and SBS.[31]  The elements of common law fraud in New York are "'a material, false representation, an intent to defraud thereby, and reasonable reliance on the representation, causing damage to the plaintiff.'"[32]  The circumstances of the alleged fraud, moreover, must be pleaded with particularity.[33]  This means that "a complaint alleging fraud must (1) specify the statements, oral, or written, that the plaintiff contends were fraudulent, either as misrepresentations or containing fraudulent omissions;

---

[30]

All Star Reply Br. 3.

[31]

As SBS has noted, the Court need not decide whether New York or New Jersey law applies to Ms. Sepulveda's common law fraud claim because there is no material difference in the states' laws.  SBS Br. 17 n. 10.

[32]

*Chanayil v. Gulati*, 169 F.3d 168, 171 (2nd Cir. 1999) (quoting *Katara v. D.E. Jones Commodities, Inc*., 835 F.2d 966, 970-71 (2nd Cir.1987)).

[33]

FED. R. CIV. P. 9(b).

(2) identify the speaker or the writer; (3) state where, when and to whom the statements were made; and (4) explain why the statements were fraudulent."[34]  Plaintiffs also "must provide actual fraudulent statements or conduct and a basis for its allegations of *scienter*."[35]  A plaintiff may accomplish this by "'(1) alleging facts to show that defendant[] had both motive and opportunity to commit fraud, or by (2) alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'"[36]

Plaintiffs allege in substance that the contest was a hoax in that "winners" were not required to answer the trivia question correctly.  Rather, the purported contest was merely a device designed to generate calls in order to hoodwink the callers into coming up with $399 on the false pretense that payment of that sum would result in their receiving an all expense paid trip to a desirable location.[37]  Plaintiffs assert also that "[d]efendants failed to disclose and omitted the fact that all 'winners' would be charged a $399 fee and that the cost of airfare was not included."[38]

---

[34]

    *Renner v. Chase Manhattan Bank*, No. 98 Civ. 926 (CSH), 2000 U.S. Dist. LEXIS 8552 at *13 (S.D.N.Y. 2000) (citing to *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 51 (2nd Cir. 1995).

[35]

    *DIMON Inc. v. Folium, Inc.*, 48 F. Supp. 2d 359, 372 (S.D.N.Y. 1998).

[36]

    *Id.* (quoting *S.Q.K.F.C., Inc. v. Bell Atlantic TriCon Leasing Corp.*, 84 F.3d 629, 634 (2d Cir. 1996).

[37]

    *See* Cpt. ¶ 96.

[38]

    *Id.*

1.      *All Star*

All Star argues that plaintiffs have failed to plead common law fraud with the particularity required by Rule 9(b).  It contends that because the paragraphs stating plaintiffs' cause of action for common law fraud[39] do not specify the particular allegations in the complaint that form the basis of the fraud, All Star is left "to guess which allegations support the fraud claim and which are unrelated."[40]  It cites again to *Discon* for the proposition that plaintiffs' fraud claim should be dismissed because it is "not the duty of Defendants or this Court to sift through the Complaint and guess which factual allegations support which claims."[41]

All Star's arguments are unavailing, indeed silly.  The complaint's "Operative Facts" section lays out the dates on which the alleged misrepresentations took place, where they took place, and the manner in which they took place.[42]

Paragraph 69, which appears under the heading "Defendants Engaged in a Scheme to Defraud Radio Listeners," alleges that the radio "'contests'" to win "'all inclusive'" and "'all expense paid trips'" were a "'scam'" implemented by defendants to "deceive. . . .listeners into believing that they had won a free trip."[43]

Paragraph 96 asserts that:

---

[39]     Cpt. ¶¶ 95-100.

[40]     All Star Reply Br. 6.

[41]     *Id.* 7 (quoting *Discon*, 1992 LEXIS 22722 at *2).

[42]     Cpt. ¶¶ 21-68.

[43]     Cpt. ¶ 69.

"Defendants intentionally misrepresented the legitimacy of the radio contests, and the fact that all listeners calling in were automatically designated 'winners' of an 'all inclusive' and 'all expense paid' trip to a destination of their choice.  Moreover, Defendants failed to disclose and omitted the fact that all 'winners' would be charged a $399.00 fee and that the cost of airfare was not included."[44]

Paragraphs 97 through 100 then allege each of the elements of common law fraud.

### 2.    SBS

SBS contends that the complaint fails to allege *scienter* and material falsity, either of which would be fatal to the common law fraud claim.

It is well established that "[a]lthough *scienter* need not be alleged with great specificity, plaintiffs still must plead the factual basis which gives rise to a 'strong inference' of fraudulent intent."[45]  A strong inference of fraud may be established "by alleging facts indicating that the defendants had both motive and opportunity to commit fraud or facts that amount to strong circumstantial evidence of conscious misbehavior or recklessness."[46]

Here, the complaint fails to allege facts giving rise to a strong a inference of fraud on the part of SBS.   The complaint's central allegation against SBS is that La Mega's on-air personnel took part in what plaintiffs' themselves – at least at points in their complaint – acknowledge was a promotion for All Star.  Plaintiffs do not allege any basis for supposing that SBS knew that All Star's

---

[44]

*Id.* ¶ 96.

[45]

*Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990) (quoting *Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 50 (2d Cir. 1987), *cert. denied*, 484 U.S. 1005 (1988)).

[46]

*Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*, 479 F. Supp. 2d 349, 360 (S.D.N.Y. 2007).  *See also Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2nd Cir. 1994).

claims were false or, for that matter, that it had *any* knowledge of how the contest was run or that it was bogus.

Plaintiffs attempt to bridge the gap between SBS and the contest by alleging also that SBS, along with All Star, "creat[ed] and implement[ed] scam radio contests" and that All Star could not have collected its fees from callers "without the consent, knowledge and participation" of SBS.[47] But plaintiffs do not provide a single factual allegation to support those conclusory assertions. Accordingly, plaintiffs' fraud claim against SBS is insufficient.

### E.     *Unjust Enrichment*

#### 1.     *SBS*

Under New York law, a plaintiff seeking recovery on an unjust enrichment theory must allege that "(1) defendant was enriched; (2) the enrichment was at plaintiff's expense; and (3) the circumstances were such that equity and good conscience require defendants to make restitution."[48]

SBS asserts two independent grounds for dismissing plaintiffs' unjust enrichment claim against it.  First, SBS argues that dismissal is appropriate because plaintiffs have failed to allege any direct dealings, or an actual, substantive relationship, with SBS.  Absent such an allegation, courts will dismiss unjust enrichment allegations.[49]  Indeed, "[t]he requirement that a defendant be enriched

---

[47]  Cpt. ¶ 71.

[48]  *CBS Broadcasting Inc. v. Jones*, 460 F. Supp. 2d 500, 506 (S.D.N.Y. 2006) (quoting *Kidz Cloz, Inc. v. Officially for Kids, Inc.*, 320 F. Supp. 2d 164, 177 (S.D.N.Y. 2004).

[49]  *See e.g., Sperry v. Crompton Corp.,* 8 N.Y.3d 204, 215-27, 863 N.E.2d 1012, 1018, 831 N.Y.S.2d 760 (2007) (affirming dismissal of unjust enrichment claim by plaintiff on the grounds that the connection between tire purchasers and defendant rubber chemical

at plaintiff's expense and that good conscience necessitate that defendant make restitution to plaintiff, clearly contemplate that a defendant and plaintiff must have had some type of direct dealings or an actual, substantive relationship."[50]

The Court agrees with SBS.  Other than listening to La Mega's broadcasts, plaintiffs have alleged no dealings or relationship between plaintiffs and SBS.  The rest of the allegations giving rise to the unjust enrichment claims center on plaintiffs' interactions with All Star.  To suggest for purposes of an unjust enrichment claim that a radio broadcasting company engages in direct dealings or has a substantive relationship with each of its listeners would render the requirement meaningless.  It is no surprise that plaintiffs' brief cites not a single case supporting its contention that direct contact or an actual, substantial relationship can be established merely by listening to a radio broadcast.

SBS' second, independent ground for dismissing plaintiffs' claim of unjust enrichment is that plaintiffs have failed to allege sufficiently that SBS was enriched.  As SBS points out, the benefit allegedly conferred unjustly was the $399 payment of fees for vacation packages.  There is no dispute that plaintiffs made the payments to All Star.  Plaintiffs later received an invoice from All Star, and plaintiffs allegedly sought reimbursement from All Star.  Thus, the sole allegation linking SBS to the payments of $399 is plaintiffs' vague, conclusory assertion that the scam radio contests enabled SBS "ro reap untold advertising revenue" and that "monies collected as a result of this

---

manufacturers was too attenuated).

[50]     *Redtail Leasing, Inc. v. Bellezza,* No. 95 Civ. 5191 (JFK), 1997 WL 603496, at *8 (S.D.N.Y. Sept. 30, 1997).

deception were shared by Defendants."[51]  Plaintiffs simply have not alleged adequately that SBS was enriched.  Accordingly, the third cause of action as applied to defendant SBS is dismissed.

> ### 2.    All Star

All Star argues that the unjust enrichment claim against it necessitates a conflict of laws analysis because Carmona and Sepulveda are from New York and New Jersey, respectively, and because All Star is based in Florida.  In All Star's view, there is an issue of which state law of unjust enrichment this Court should apply to each set of plaintiffs' claims.

This is a non-issue.  The threshold question in a conflict of laws analysis is whether an "'actual conflict'" exists.[52]  Whether an actual conflict exists turns on whether the applicable law of the relevant jurisdictions provides different substantive rules[53] and whether those differences are "'relevant' to the issue at hand,"[54] and will have a "'significant possible effect on the outcome of the trial.'"[55]

Here, no actual conflict exists.  There is no relevant difference between the unjust

---

[51]

Cpt. ¶ 71.

[52]

*Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 331-32 (2d Cir. 2005). *See also Allstate Ins. Co. v. Stolarz, 613 N.E.2d 936*, 81 N.Y.2d 219, 224, 613 N.E.2d 936, 938 (1993).

[53]

*Curley v. AMR Corp.*, 153 F.3d 5,12 (2d Cir. 1998).

[54]

*Fin. One Pub.*, 414 F.3d at 331 (quoting *Tronlone v. Lac d'Aminate du Quebec, Ltee*, 747 N.Y.S.2d 79, 80 (App. Div. 1st Dep't. 2002).

[55]

*Id.* (quoting *Simon v. Philip Morris, Inc.*, 124 F. Supp. 2d 46, 71 (E.D.N.Y. 2000)).

enrichment laws of any of the three states involved, a point that All Star implicitly concedes. Additionally, All Star's core substantive argument in favor of dismissal of the unjust enrichment claim is that plaintiffs have failed adequately to allege that the vacation package was not worth at least $399 – a deficiency that would defeat plaintiffs' unjust enrichment claim in any of the three possible states.  The argument for choice of law analysis is thus baseless.

Equally lacking in merit is All Star's substantive point – that the unjust enrichment claim must be dismissed because plaintiffs failed to allege that what they received from All Star was not worth the $399 they paid for it.  All Star's argument is difficult to take seriously.  The heart of this action is the claim that All Star and SBS defrauded plaintiffs out of $399 each by promising something that would never be delivered – an "all inclusive" vacation package.  Whatever the ultimate merits of the claim, the allegation is clear and explicit that whatever plaintiffs received from All Star, it was *not* worth the $399 they paid for it.

Finally, All Star argues also that the unjust enrichment claim must be dismissed because the Terms and Conditions that All Star claims were included in its mailings to plaintiffs clearly set forth what was not included in the vacation package and informed plaintiffs of their right to a refund within thirty days of the purchase.  While they do not deny expressly that they received them, plaintiffs argue that the Court should not consider the Terms and Conditions because their complaint does not refer to them.

All Star's argument is unavailing and the Court need not resolve whether the Terms and Conditions should be considered at this stage.  The complaint alleges expressly that both Carmona and Sepulveda sought a refund over the phone and that All Star told plaintiffs that the company had a no refund policy.  At best then, even if the Court were to consider the Terms and

Conditions, there would remain a dispute about whether plaintiffs could have obtained a refund. There would remain also the question whether the availability of a refund would defeat a claim of unjust enrichment where plaintiffs paid the $399 prior to receiving the Terms and Conditions.

Accordingly, the Court denies All Star's motion to dismiss the unjust enrichment claim against it.

### F.    The RICO Claims

Plaintiffs fifth cause of action alleges that SBS and All Star committed multiple violations of the Racketeering Influenced Corrupt Organizations Act (RICO) statute.[56]  To state a civil RICO claim, a plaintiff must allege "(1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to the business or property; and (3) that the injury was caused by the violation of Section 1962."[57]

Here, plaintiffs assert claims against All Star and SBS under at least three and perhaps all four subsections of Section 1962.

### 1.    Section 1962(a)

Section 1962(a) bars the use of income received from a pattern of racketeering activities to acquire an interest in, establish, or operate an enterprise.[58]  To state a claim under Section

---

[56]      18 U.S.C. §§ 1961 *et seq.*

[57]      *De Falco v. Bernas*, 244 F.3d 286, 305 (2d. Cir. 2001).

[58]      18 U.S.C. § 1962(a).

1962(a), a plaintiff must allege that she was injured as a proximate consequence of the investment of funds derived from the alleged racketeering activity.[59]  To succeed under 1962(a), the alleged use or investment injury must be "distinct from the injuries resulting from predicate acts" themselves.[60] Conclusory allegations that defendants used or invested income received from plaintiffs are insufficient to state a claim under 1962(a) because they fail to show how that use or investment injured plaintiffs.[61]  Furthermore, the injury requirement is not satisfied by allegations that a defendant, which is also the enterprise, invested racketeering income in its general operations, thereby permitting it to continue its pattern of racketeering and cause further injury.[62]

Here, plaintiffs have failed to state a viable claim under Section 1962(a).  Their complaint relies solely on the conclusory assertion that both defendants "received income directly from the pattern of racketeering activity and used the income or its proceeds for their own operation and for themselves."[63]  This is precisely the type of conclusory allegation that courts reject.[64] Plaintiffs have failed to allege any injury whatsoever from the defendants' alleged investment of

---

[59]

*See, e.g.*, *Ouaknine v. MacFarlane*, 897 F.2d 75, 82-83 (2d Cir. 1990).

[60]

*Discon, Inc. v. NYNEX Corp.,* 93 F.3d 1055, 1063 (2d. Cir. 1996)*, vacated in part on other grounds,* 525 U.S. 128 (1998).

[61]

*Katzman v. Victoria's Secret,* 167 F.R.D. 649, 657 (S.D.N.Y. 1996), *aff'd.* 113 F.3d 1229 (2d Cir. 1997).

[62]

*Katzman\,* 167 F.R.D. at 657.

[63]

Cpt. ¶ 104.

[64]

*See e.g.*, *Katzman,* 167 F.R.D. at 657; *Schick v. Ernst & Whinney*, No. 90 Civ. 1005 (RWS), 1991 WL 8543, at *8-9, (S.D.N.Y. Jan. 18, 1991).

20

racketeering income.  Indeed, their memorandum in opposition to the motion does not contest this point.

### 2.    Section 1962(b)

The complaint is not entirely clear as to whether plaintiffs assert a claim under Section 1962(b).  Assuming *arguendo* that they do so intend, however, the claim would be baseless.

Section 1962(b) makes it unlawful for "any person through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise."[65] In order "to state a claim under Section 1962(b), a plaintiff must allege (1) an injury resulting from the acquisition or control of an enterprise through a pattern of racketeering activity"[66] and (2) "that the injury was caused by the acquisition or maintenance of control and not by the predicate acts."[67]

The complaint is devoid of any allegation that defendants acquired or controlled an enterprise through a pattern of racketeering activity, let alone that they thereby injured plaintiffs.  Any Section 1962(b) claim therefore is insufficient.  Indeed, as with the Section 1962(a) claim, plaintiffs' opposition brief does not seek to defend any Section 1962(b) claim.

---

[65]

Section 1962(b) reads:

"It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."

[66]

*Id* (citing to *Official Publications v. Kable News Co.*, 775 F. Supp. 631, 635 (S.D.N.Y. 1991).

[67]

*Id.* (citing to *O & G Carriers, Inc. v. Smith*, 799 F. Supp. 1528, 1543 (S.D.N.Y. 1992).

3.      *Section 1962(c)*

Subsection 1962(c) bars "any person employed by or associated with any enterprise" from conducting or participating, "directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity."[68]  The law is clear that a corporation "may not be simultaneously the 'enterprise' and the 'person' who conducts the affairs of the enterprise through a pattern of racketeering activity."[69]

Defendants contend that the complaint fails to allege the proper distinction between the "person" and "enterprise" involved in racketeering activity, as required under Section 1962(c). The Court agrees.  In Paragraph 103 of their complaint, plaintiffs assert that:

> "Defendant SBS and Defendant All Star each constituted an 'enterprise' within the meaning of 18 U.S.C. § 1961(4).  Defendant SBS is a 'person' and Defendant All Star is a "person" within the meaning of 18 U.S.C. § 1961(3)."[70]

Paragraph 106 of the complaint states:

> "In particular, Defendants conducted or participated in the conduct or the affairs of the enterprises through a pattern of predicate acts of mail fraud and wire fraud."[71]

These two paragraphs fail to meet the distinctness requirement just discussed.  In their opposition to defendants' motions, plaintiffs attempt to satisfy the requirement of 1962(c) by making

---

[68]     18 U.S.C. 1962(c).

[69]     *Anatian v. Coutts Bank (Switz.) Ltd.*, 193 F.3d 85, 89 (2d Cir. 1999) *(quoting Bennett v. United States Trust Co.*, 770 F.2d 308, 315 (2d Cir. 1985)).

[70]     Cpt. ¶ 103.

[71]     *Id.* ¶ 106.

allegations not found in their complaint.  They claim in a footnote that the "complaint alleges that the persons who carried out the fraud" included "DJ Vega, the All Star representative identified on air as Alfredo, and the All Star representatives Carmona and Sepulveda spoke to over the phone.[72] But nothing in the complaint actually supports this.  Indeed, the complaint does not allege that any of the individuals identified in plaintiffs' brief are "persons" who allegedly conducted or participated in the alleged RICO "enterprise."  The complaint's only identification of entities or persons for the sake of the RICO claims are All Star and SBS – precisely the same entities alleged to be the RICO enterprises.  In consequence, the Section 1962(c) claim fails to state a claim for relief.

### 4.    *Section 1962(d)*

Subsection 1962(d) prohibits any person from conspiring "to violate any of the provisions of subsections (a), (b), or (c) of this section."[73]  Plaintiffs' clear failure to satisfy the pleading requirements of the previous subsections is necessarily fatal to any conspiracy claim they might assert under Section 1962(d).[74]

The lack of merit to plaintiffs' claim under Section 1962(d) is reflected in plaintiffs' silence on the subject in their opposition brief, which fails even to mention the conspiracy claim.

---

[72] Pls. Br. at 29 n. 14.

[73] 18 U.S.C. 1962(d).

[74] *See Katzman*, 167 F.R.D. at 658; *See also Craighead v. E.F. Hutton & Co.*, 899 F.2d 485 (6th Cir. 1990) (when a complaint fails to state a claim under either §§ 1962(a), 1962(b), or 1962(c), then a claim under §1962(d) fails as well).

## II.    All Star's Motion to Strike Paragraph 72 of the First Amended Complaint

Paragraph 72 of the complaint alleges:

> "There have been numerous consumer complaints to various federal and state authorities about Defendant All Star's travel scams, and web sites are full of consumers who have complained about All Star's unfair and deceptive practices.  Moreover, the Attorney General of Puerto Rico has issued a cease and desist order to Defendant All Star regarding all Star's travel scams conducted in Puerto Rico.  As a result, All Star conspired with Defendant SBS to deceive residents of New York and New Jersey, both of which have large and growing Hispanic communities."[75]

All Star contends that the allegation lacks any relevance to the facts that form the basis of plaintiffs' claims and that it should be stricken as impertinent and immaterial.

Rule 12(f) "authorizes a court to 'order stricken from any pleading . . . any redundant, immaterial, impertinent, or scandalous matter.'"[76] Nevertheless, "Rule 12(f) motions have been described aptly as disfavored and 'time wasters.'"[77] As one commentator has put it:

> "'Matter will not be stricken from a pleading unless it is clear that it can have no possible bearing upon the subject matter of the litigation. If there is any doubt as to whether under any contingency the matter may raise an issue, the motion should be denied. Even if the allegations are redundant or immaterial, they need not be stricken if their presence in the pleading cannot prejudice the adverse party.'"[78]

Here, it cannot be said that paragraph 72 "can have no possible bearing upon the subject

---

[75]     Cpt. ¶ 74.

[76]     *Ricketts v. City of Hartford*, 74 F.3d 1397, 1415 (2d Cir. 1996).

[77]     *Nat'l Council of Young Israel v. Wolf,* 963 F. Supp. 276, 282 (S.D.N.Y. 1997) (quoting 5A CHARLES ALAN WRIGHT AND ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 1382 (1990)).

[78]     *W.E. Booton, Ltd. v. Scott & Williams, Inc.,* 45 F.R.D. 108, 110 (S.D.N.Y. 1968) (quoting 2A J. MOORE, FEDERAL PRACTICE ¶ 12.21[2] at 2317-18 (2d ed. 1967)).

matter of the litigation."  The existence of a multitude of complaints similar to those of the named plaintiffs here may well have a bearing on class certification.  The existence of a cease and desist order by the Attorney General of Puerto Rico seems relevant to the issue of All Star's wrongful intent.  And the allegation of a conspiracy between SBS and All Star, whatever its merit, is directly relevant to this lawsuit.  In any case, as this Court does not submit civil pleadings to juries, it is impossible to see how All Star could be prejudiced if the allegations stand.

### *Conclusion*

For the foregoing reasons, SBS's motion to dismiss the amended complaint [docket item 13] is granted to the extent that the third through fifth claims for relief are dismissed against it and denied in all other respects.

All Star's motion to dismiss the amended complaint [docket item 9] is granted to the extent that the fifth claim for relief is dismissed and denied in all other respects.

All Star's motion to strike paragraph 72  from the amended complaint [docket item 9] is denied in all respects.

SO ORDERED.

Dated:        March 30, 2009

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)